THE NATIONAL BANK OF LAWRENCE v. OLIVER BAR-
BER, *as Treasurer of Douglas Co., et al.*

SEC. 7, CH. 90, LAWS OF 1870, *How far Void.* Section 7 of chapter 90 of the
Laws of 1870, p. 90, [ and of chapter 84, Comp. Laws of 1879, pp. 796, 797,]
so far as it attempts to divert any portion of the general county tax or
general township tax to the payment of a certain class of township rail-
road bonds, is void, being in contravention of section 4 of article 11 of
the constitution, which provides that "no tax shall be levied except in
pursuance of a law, which shall distinctly state the object of the same; to
which object only such tax shall be applied."

*Error from Douglas District Court.*

ACTION brought by the *National Bank*, of Lawrence,
against *Barber*, as treasurer of Douglas county, and the
*Township of Eudora*, in said county. The petition, among
other matters, alleges that—

"Under and by virtue of ch. 90, Laws of 1870, the town-
ship of Eudora did, on the 1st day of May, 1872, make and
cause to be issued in the name of said township, $15,000 of
its bonds, to pay for the like amount of the capital stock of
the St. Louis, Lawrence & Denver railroad company, to aid
in building the railroad of said railroad company through
said township; said bonds were issued in full compliance
with said law, and the railroad so sought to be aided in its
construction was built through said township, and the capital
stock therein was issued and delivered to said township for
its said bonds; that said bonds were made due and payable
in twenty years from their date, and bear annual interest at
the rate of six per cent. per annum, evidenced by interest
coupons for each year's interest attached to the said bonds,
and said bonds were made payable to said railroad company,
or bearer; that the plaintiff is the owner and holder, for
value, of coupons on said bonds to a larger amount than
$1,000, that have matured since the first of May, 1873; that
it did also recover a judgment on its coupons attached to said
bonds, in the circuit court of the United States for the dis-
trict of Kansas, in an action wherein it was plaintiff and said
township of Eudora was defendant, on or about June 5th,
1877, for the sum of $1,460.84, and costs of suit; that said
coupons and said judgment are all unpaid and each of them,

and said township has no other funds to pay them, save that hereinafter mentioned, and has levied no taxes under § 6 of said ch. 90, Laws 1870; that for the year 1878 there was levied on the railroad so built as aforesaid, in said township, for township purposes about the sum of $680, and for county purposes about $400, each of which sums of money has been collected and is now held by the defendant, Oliver Barber, as treasurer of said county of Douglas; that the plaintiff has applied to him for said sums of money and each of them, to be paid on said coupons and on said judgment and each of them, so far as they would extend, but that said Barber fails and refuses to pay any of said sums, or any part thereof, to the plaintiff, as he is bound to do under § 7 of said ch. 90, Laws 1870, claiming that he is in doubt as to whom he should pay, and whether the plaintiff is entitled to it or any part thereof, and setting up that the defendant, said township, through its trustee, claims said moneys or a part thereof.

"Wherefore, the plaintiff prays the judgment of the court that said Barber pay over to it said moneys, or such part thereof as plaintiff is entitled to, and for such other and different relief as the court may give."

The cause was submitted to the court at the October Term, 1879, for its decision on the petition and the answers therein, and the following stipulation:

"If the court holds that section of the law referred to in the petition herein, to wit, sec. 7, of ch. 90, of the Laws of 1870, valid in whole, then the defendant Barber shall be adjudged to pay over to the plaintiff the funds received by him or in his hands, as set forth in the petition, as county and township taxes on the railroad in the petition stated. If the court holds said law valid as to the township taxes on said railroad, and not valid as to the county taxes mentioned therein, then the said Barber shall be adjudged to pay the said plaintiff the amount of funds in his hands, realized as township taxes, as stated in the petition. If the court shall decide said law valid as to said county taxes on said railroad, in the petition set forth, and not as to township taxes, then the said Barber shall be adjudged to pay the said county taxes to the plaintiff. If the court shall decide said section of said law wholly invalid, the judgment to be for defendants for costs — both parties reserving the right to prosecute error in said action to the supreme court. All other questions expressly agreed to be with the plaintiff."

Upon hearing the cause, the court found and decided that said § 7 of ch. 90, Laws of 1870, referred to in the plaintiff's petition, is wholly invalid; and the court therefore ordered that the defendants go hence without day, and recover their costs; to which ruling the plaintiff excepted, and it has brought the case to this court.

*S. O. Thacher*, for plaintiff in error:

1. Under our constitution and form of government, it is conceded that all legislative power is vested in our legislature, save where it is clearly restrained by the constitution. (Const. of Kas., art. 2, § 1; 4 Kas. 124; 7 id. 87, 88, 536, *et seq.*; 8 id. 323.)

2. The law is uniform, and so complies with the constitution. (12 Kas. 321.)

3. The power of the legislature to prescribe and apportion taxes cannot be questioned by the courts. (7 Kas. 539; 49 Mo. 501, and cases there cited.) The question of a uniform tax has been fully discussed in Sedgwick on Con. and Stat. Law, 502–5 (2d ed.), and in Cooley on Taxation, 428, 429.

4. The county and town are part of the state, and under its control. (Dillon on Mun. Corp., §§ 10a, 34, 35, 36, and note; 12 Ill. 9.) County and township funds are under legislative control. Counties, as to powers and duties, remain under legislative control. (15 Ill. 480.) As to marked differences between cities and counties or towns, see Dillon, 761–5, and cases cited. Also, 8 U. S. Digest, (N. S.,) 1877, § 105, p. 196; 10 Kas. 564. For a strong case on this plenary power of the legislature, see 63 Ill. 66.

5. This law is similar in principle to statutes in other states. (11 Ill. 202–9.) This case holds the power of the state to set apart a certain part of a county fund for a specific use. A statute similar to the one in question was discussed in 58 Ill. 456–8, and though held invalid on other grounds, was not questioned on this.

6. This court gave a general comment upon this law, in 13 Kas. 188, 189, and did not express any doubt at all about this

§ 7, though not commenting upon it. The whole reasoning in the case, however, sustains the view of the complete power of the legislature to pass the act in question, for it involves the question of making the county liable for expenses and duties pertaining to a single township. If it was competent for the legislature to impose the burden of paying all the preliminary expenses for the township upon the county, it was equally competent to provide that the funds of the county or township should be applied to the payment of the bonds to be issued under the law. The apportionment of county and township funds was clearly within the legislative power.

7. We may go further. The funds so raised under § 7 cannot be used for any other purpose, at least without legislative sanction, and it is a serious question whether the legislature can authorize a diversion. But as to the inviolability of the fund, as the law now stands, it seems to me there is no real question. The point seems to be passed on in 11 Kas. 209–218. The funds mentioned in § 7 came into the defendant's (Barber's) hands, appropriated by law to a specific use. Can he "divert the funds from that purpose without making himself and sureties liable to the holder of the indebtedness" meant to be paid by these funds?

8. It seems quite evident that this provision of § 7 entered into and became a part of the contract between the bondholder and the township and county. (11 Kas. 209, *et seq.;* Sedgw. on Stat. and Con. Law, 588–9, 608–9. The case of *Brooklyn Park Co. v. Armstrong,* 45 N. Y. 234–246, is quite in point here. There the funds arising from the sale of certain lands were pledged to the payment of bonds to be issued by the city, although the general liability of the city was also pledged. The court of appeals held that this specific security could not be taken away by any subsequent act of the legislature. The point is expressly ruled in *Von Hoffman v. Quincy,* 4 Wall. 550. The court holds: "It is also settled that the laws which subsist at the time and place of making the contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or in-

corporated in its terms. This principle embraces those which affect its validity, construction, discharge, and enforcement."

This exposition of the law from our highest court accords with the views of this court in 4 Kas. 250, where it was held that funds coming into the treasurer's hands for interest on county bonds cannot be diverted by any order made by the county board. In the case under § 7, a certain sum of money came into the treasurer's hands, charged with a trust. He is bound to fulfill that trust.

*J. W. Green,* and *Geo. J. Barker,* for defendants in error:

Plaintiff in error bases its claim to this money upon sec. 7, ch. 90, Laws of 1870. Defendants in error claim that said section is in violation of section 1 of article 11 of the constitution of this state, the first clause of which section declares "that the legislature shall provide for a uniform and equal rate of assessment and taxation." Any law, therefore, which by its terms provides, either directly or indirectly, that taxes shall be assessed and collected by a method which shall not be uniform and equal, is in violation of this clause of the constitution, and void. It is not contended that by uniformity and equality each piece of property of equal value throughout the state, or throughout a county, must pay the same amount of tax; but it is contended that the rate of taxation shall be uniform throughout a certain district, and that each piece of taxable property throughout a county shall bear its just proportion of taxes raised for county purposes, and each piece of taxable property within a township shall bear its just proportion of township expenses and indebtedness. (2 Black, 510; 19 Wall. 650; 3 Ohio St. 1; 9 Wis. 410.)

That § 7 of ch. 90, Laws of 1870, is objectionable for the reason that it is in contravention of the first clause of § 1 of article eleven of the constitution, there can be no doubt. It is true, that it does not exempt any railroad built within the state wholly or in part by township aid, from taxation, but it does provide for an ununiform and unequal taxation of the property within any county in which a railroad has been

built in whole or in part by the aid of any township within such county. It in effect provides that the property of so much of a railroad as lies within a township which has aided in the construction of the railroad, shall be exempt from bearing its just proportion of county and township expenses and indebtedness. Said § 7 provides in effect that that portion of the St. Louis, Lawrence, & Denver railroad which lies in Eudora township, shall be exempt from paying any portion of the tax raised to defray the county expenses and indebtedness, and also be exempt from paying any of the general expenses of that township. Such a law is repugnant to the first clause of § 1 of article 11 of the constitution. ( 19 Kas. 234, 316; 37 Cal. 246; 59 Ill. 142.)

But it is claimed by plaintiff in error that these taxes have been already collected, and that the legislature has the power of appropriating them in such a way and for such purposes as it sees fit. In this transaction between the township and the railroad company, the township acted as a private corporation, and as such is interested in the management of said road, and is held to the same liabilities and rules as a private corporation. (53 N. Y. 141; 31 Pa. St. 185; 3 Hill, 531.) If, therefore, the proposition contended for by plaintiff in error is correct, the legislature has the power to appropriate the funds belonging to one municipal corporation to cancel the private indebtedness of another. The answer of plaintiff in error is, these taxes are not the property of the county of Douglas as the funds of a private corporation are the property of such corporation, and therefore the power of the state to direct the application is plenary.

The cases cited by plaintiff in error are cases in which the legislature assumed to direct the revenues of the county to the particular purpose for which they were raised. It is not denied that if a revenue has been raised for a particular purpose that the legislature has the power to compel its application, or that if the object for which a certain tax has been raised fails, that the legislature may direct its application. (Cooley on Taxation, 494, and cases cited.)

It is true that some of the cases in New York and Pennsylvania go to a great extent, but it is submitted that their constitutions do not contain the restrictive clause contained in the constitution of Kansas. "To tax the property of one township to pay the debt of another township, is an extraordinary and uncommon kind of taxation. It can only happen by the change of the boundary lines of one or more townships." (19 Kas. 243.) But does not section seven indirectly, if not directly, do this? It appropriates the money raised by the county by taxation to meet and discharge its indebtedness, to the payment of the private bonded indebtedness of one of its townships. The case of *Sleight v. The People,* 74 Ill. 47, is in point, and, as it appears, is decisive of this case; also, 22 Wis. 660.

The appropriation of the tax levied against said road for county purposes is to impose a debt upon said county, without its consent. That this is *ultra vires,* see 24 Mich. 44; 28 id. 228; 27 Wis. 418; 51 Ill. 18; 58 id. 463; 31 Vt. 226–236; 16 Mass. 76, 216; 2 Greenl. 28, 32; 6 id. 112.

The act in question is in direct violation of § 4, article 11, of the constitution of Kansas. Sec. 7 of ch. 90 provides that if any county or township tax shall be assessed and collected from any railroad which may have been built, in whole or in part, in any township which may have subscribed stock as provided in the foregoing sections, all such county or township tax arising from said railroads, within said township, shall be set apart and held by the treasurer for the benefit of such township, and applied to the payment of the interest and principal of said bonds; but the constitution of this state provides that taxes shall be levied in pursuance of a law which shall distinctly state its object, to which object only such tax shall be applied. It is the taxes provided for by § 83, ch. 107, and § 22, ch. 110, Comp. Laws 1879, which the plaintiff in error seeks to appropriate to the payment of its claim. It will be observed that § 7 does not provide that a tax shall be assessed and collected against this railroad for the specific object of paying the interest and principal of said

bonds, (and if it did the section would be unconstitutional, for reasons heretofore assigned,) but it provides that the treasurer of the county shall apply taxes which have been assessed and collected for other and specific objects, to the discharge of the principal and interest, to wit, taxes assessed and collected for county and township purposes; but plaintiff in error says that the funds mentioned in § 7 came into defendant's (Barber's) hands appropriated to a specific use, and that they cannot be used for any other purpose, and that use and purpose is alleged to be, in plaintiff's petition, county and township purposes.

Plaintiff in error seems to agree that these funds cannot be so appropriated, on account of this constitutional provision. (6 Kas. 353; 11 id. 209–218; 22 Wis. 660.)

If it shall be held that the taxes assessed against the said road can be thus diverted, there can be no limit. If the legislature has the power to divert these taxes to this purpose, it has the power to direct that all the taxes raised in said township for county purposes shall be appropriated to the payment of this township debt.

There can be no reason given why the taxes assessed against that railroad shall be thus applied, which will not apply with equal force as to taxes assessed against any other property within the township.

*S. O. Thacher,* for plaintiff in error, in reply:

In the case of *Sleight v. The People,* 74 Ill. 47, the court rests its decision on a peculiar provision of the state constitution, which in effect provides that corporate taxes can only be levied for corporate purposes. The entire argument turns upon the construction of this prohibition, and the court holds the case to come within it. But this case seems to admit that the township taxes on the railroad, within the towns subscribing for stock in the railroad, should be appropriated as provided by statute. The precise question before the court was the power of the legislature to provide that taxes levied for county and township purposes upon the railroad "in the

towns of Oxford and Clover," which towns had not taken stock in the railroad company, could be used to pay the principal of bonds not issued by those townships. The court carefully limits the opinion to this, and, as to it, holds the law invalid. So far from holding, as the defendants in error seem to suppose, with them, by clear implication the case holds with us. The court does not decide that the sums levied for county purposes in the towns subscribing stock, cannot be used as provided by statute, but it holds that taxes levied for county or township purposes in townships not interested in the railroad, cannot be used to pay the debt of those townships that are: this is the extent of the decision. And even this decision seems in conflict with former adjudications of the same court. (5 Gilm. 405–416; 12 Ill. 8.)

This question, as presented by defendants in error, is fully discussed in Cooley on Taxation, pp. 110–116, and the plenary power of the legislature over the matter is clearly upheld. (See also Cooley Const. Lim. 237, 740.)

The county, under the law in question, in certain respects acts for the township; it assists the township to effectuate the purposes of the act. It aids it in bringing into existence and creating property, for purposes of taxation, that did not exist before. This being so, why is it not competent for the legislature to provide that the county's share in developing this new property which it has helped to create in the township, shall be the revenue it can derive from it? May not the legislature, in its wisdom, devise means for municipalities to aid in public improvements, such as railroads, mill-dams, schools, by devoting to their support the excess in revenue derived from the newly-created property? There is nothing in the constitution prohibiting it, either directly or indirectly.

It seems hardly worth while to say that this law does not exempt any property from taxation, though if it did, it would appear to be within legislative discretion. (19 Kas. 234, 311, 312.)

As to § 4, article 11, of the constitution, our contention is that these funds, township and county, raised by taxation on

the railroad within Eudora township, were levied and paid for a specific purpose; that this purpose is declared by law to have been that of the municipal authorities levying the taxes, and of the property-holders in paying them. No law could be more specific than the one under consideration ; no object more accurately designated for which the taxes should be appropriated. Language cannot be more plainly used.

This brings the whole question back to the proposition of defendants in error, that this provision of law is in defiance of § 1, article 11 of the constitution. Just how the constitution is infracted by this law is not pointed out. This section of the constitution received most ample and elaborate examination by this court in *Comm'rs of Ottawa Co. v. Nelson*, 19 Kas. 234, and was under review in *Francis v. A. T. & S. F. Rld. Co.*, 19 Kas. 303. To the principles settled in these cases further discussion can add but little. It is obvious that the rate of assessment and valuation of the property of the township under this law is not interfered with in any manner. The rate is uniform. The law makes no discrimination in that respect. No property is assessed too high or too low.

The destination of the proceeds of the taxation is the real point at issue. And on this, the real field of contention, the other side offers nothing to meet the clear reasoning and inferences in 13 Kas. 188, 189. Here the court rightly held the county liable for all the expenses antedating the issue of the bonds. Surely, if the execution of the purposes of a single township can be thus thrown upon the county by legislative direction, much more can the funds arising from county and township taxation within the township on this property, created by this outlay of money of the county, and the credit of the township, be pledged by the act of the legislature to meet the debt of the township so made.

The opinion of the court was delivered by

VALENTINE, J.: The sole question presented to the court for its decision in this case is, the validity of § 7 of ch. 90 of the Laws of 1870. The section reads as follows:

"If any county or township tax shall be assessed and col-

lected from any railroad which may have been built in whole or in part in any township which may have subscribed stock as provided in the foregoing sections, all such county and township tax arising from said railroads within said township, shall be set apart and held by the treasurer for the benefit of such township, and applied to the payment of the interest and principal of said bonds, and after the payment thereof, the same shall be added to the school fund of said township; if only a general county or other tax is levied and collected from said railroad in the county, then the township or townships which may have aided in the construction of said road as aforesaid, shall be entitled to have of said tax a fair proportion thereof, to be determined by comparing the length of the road in the township to the whole length in the county." (Laws of 1870, p. 191. See also Laws of 1879, p. 253, §1; Comp. Laws of 1879, pp. 796, 797, §7; Laws of 1876, p. 215, §7, and pp. 220, 221, §10; Comp. Laws 1879, p. 791, §7, and p. 794, §10.)

The defendants in error claim that said section 7 is void, because, as they claim, it is in contravention of sections 1 and 4 of art. 11 of the constitution of the state of Kansas. So much of section 1 of art. 11 of the constitution as is necessary to be considered in this case reads as follows:

"The legislature shall provide for a uniform and equal rate of assessment and taxation."

Said section 4 of art. 11 of the constitution reads as follows:

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied."

This litigation has reference to that portion of the county tax of Douglas county and that portion of the township tax of Eudora township, which was levied on the railroad property of the St. Louis, Lawrence & Denver railroad company, in said Eudora township and county of Douglas. We shall first consider the question raised with reference to the county tax; but what we shall say with reference to the county tax, we think will also have application in principle to the township tax.

This county tax, which is now in litigation, is a portion of

the general county tax which was levied on all the taxable property of the county by the county commissioners for general county purposes, under § 83 of the tax law. (Comp. Laws of 1879, p. 956.  See also id., p. 275, §16, sub. 4; id., p. 312, §§181, and 1.)  This general county tax was levied for "county purposes," for "county charges and expenses," for "current expenses of the county," and no portion of it was levied for the purpose of paying principal or interest on township railroad bonds.  And it was levied for said "county purposes" "in pursuance of a law;" and therefore, no portion of it can now be diverted from such purpose or purposes. (Const., art. 11, § 4; *The State v. Comm'rs of Marion Co.*, 21 Kas. 419.)  Certainly no portion of this tax was levied for the purpose for which the plaintiff now desires to use it.

The tax now in litigation either is or is not a part of the county tax.  If it is, then it cannot be diverted from county purposes as before stated.  But if it is not, then neither it nor the real county tax is levied on the taxable property of the county or township at "a uniform and equal rate." That is, if it is not a part of the county tax, then all taxable property in the county, except the railroad property, in which this tax was levied, is subject to a county tax, while this railroad property is not subject to any county tax, and no property in the county or township, other than this railroad property, is subject to so high a township railroad bond tax, as this railroad property is.  While this railroad property is subject to the same township railroad bond tax that other property in the township is, it is also, in addition thereto, subject to another township railroad bond tax equal to the county tax and the township tax levied on other property, and called a county tax and a township tax.  Hence, it will be seen that if the tax now in litigation is not a county tax or a part thereof, then neither it nor the real county tax is levied on the taxable property of the county and township at "a uniform and equal rate," and hence, both it and the statute attempting to create it must be held to be void.  Besides, if it is not a county tax, then both it and the statute

35—24 KAS.

attempting to create it, must be held to be void, for the additional reason that it is not levied in pursuance of any law which distinctly states the object of the tax. (Const., art. 11, § 4; *A. T. & S. F. Rld. Co. v. Woodcock*, 18 Kas. 20.) If it is not a county tax, then it is really not levied in pursuance of any law. No statute can be found authorizing the levy of any such tax. And it will not do to call it a county tax for the purpose of giving authority to the county commissioners to levy it under the statutes which authorize the levy of county taxes, and also for the purpose of avoiding that constitutional provision which requires the tax to be imposed at a uniform and equal rate, and then, after the tax is supposed to be legally levied, to say that it is not a county tax for the purpose of avoiding that other constitutional provision which requires that a tax shall be applied only to the object for which it was levied. It either must or must not be a county tax, and in either case the statute attempting to apply it as a township railroad bond fund must be void.

It will be noticed that under the statute in question, the tax in question is *never* to go into the county fund, or to become any part thereof. The statute provides that it "shall be set apart and held by the treasurer for the benefit of such township, *and applied to the payment of the interest and principal of said bonds;* and after the payment thereof, the same shall be *added to the school fund* of said township." That is, the statute in effect provides that the railroad property in the township, belonging to the railroad company to which the bonds were issued, shall be exempt from bearing its just proportion, or any proportion, of the expenses or other indebtedness of the county or township.

This court has intimated that it is possible that the legislature may have the power to exempt from taxation personal property, in addition to that exempted by the constitution. (*Ottawa Co. v. Nelson*, 19 Kas. 237, 238; *Francis v. A. T. & S. F. Rld. Co.*, 19 Kas. 311, 312.) But this court has never intended to intimate or decide that real estate may be so exempted. And the bulk of all railroad property is real estate.

It will also be noticed that under the statute in question, no part of the tax in question is ever to go into or become a part of the township fund, although a part of such tax was levied as general township tax. And the plaintiff, the National Bank of Lawrence, which now owns the coupons for interest due on said bonds, so construes the statute, and commenced this action to compel the county treasurer to pay all such tax collected by him directly to it, the plaintiff. But as substantially the same principles which govern with reference to the county tax, also govern with regard to the township tax, it is not necessary to say anything further as to the township. In both cases it is a clear attempt on the part of the statute to divert funds, raised by taxation for one object, to another object.

The judgment of the court below will be affirmed.

All the Justices concurring.