STATE, EX REL. JOHN AHERN, V. JOHN F. WALSH.

[FILED MARCH 3, 1891.]

1. **Taxes:** EXEMPTION OF INTERNAL IMPROVEMENTS UNCONSTITUTIONAL. The effect of the provisions of the "act setting aside the revenue arising from the taxation of works of internal improvement to pay the bonds issued to construct or complete the same," approved February 20, 1875, is to exempt the works of internal improvement within a precinct which has issued its bonds to aid in the construction of the same from paying any state, county, precinct, or school tax, until such bonds are paid, and is therefore in contravention of section 1 of article 9 of the constitution.

2. ———: ———. The act, so far as it has the effect to exempt works of internal improvement from the payment of a school tax lawfully levied thereon, conflicts with that part of section 4, article 8, of the constitution, which provides * * * "and such other means as the legislature may provide, shall be exclusively applied to the support and maintenance of common schools in each school district in the state."

3. ———: CONSTITUTIONAL LAW: THE WORD "MEANS," as used in said clause, includes moneys arising from annual donation for

school purposes levied under legislative authority. (*District Township of Dubuque v. County Judge*, 13 Ia., 250; *Crosby v. Lyon*, 37 Cal., 242.)

4. ――――: ――――. The act of February 20, 1875, took effect prior to the adoption of the present constitution and was valid when passed. Its provisions are in force as to all internal improvement bonds issued by a township, precinct, city, or village, after the passage of the act and prior to the adoption of the constitution.

ORIGINAL application for *mandamus*.

*E. W. Thomas*, and *Frank Martin*, for relator, cited: *Clother v. Maher*, 15 Neb., 6; *Sleight v. People*, 74 Ill., 47; *Allhands v. People*, 82 Id., 234; *Natl. Bank, Lawrence v. Barber*, 24 Kan., 534.

*E. A. Tucker*, and *Isham Reavis*, *contra*, cited: *Zanesville v. Richards*, 5 O. St., 589; *Bradshaw v. Omaha*, 1 Neb., 16; *Home of the Friendless v. Rouse*, 8 Wall. [U. S.], 430; *Tomlinson v. Branch*, 15 Id., 460; *Natl. Bank v. Barber*, 24 Kan., 534; *Dodge v. Woolsey*, 18 How. [U. S.], 331; *R. Co. v. McClure*, 10 Wall. [U. S.], 511; *White v. Hart*, 13 Wall. [U. S.], 646; *Wilmington R. Co. v. Reid*, Id., 264; *Green v. Biddle*, 8 Wheat. [U. S.], 1; *Benson v. N. Y.*, 10 Barb. [N. Y.], 447; *Chestnut v. Shane*, 16 O., 599; *Tilton v. Swift*, 40 Ia., 78; *Broidie v. McCabe*, 33 Ark., 690; *Koenig v. R. Co.*, 3 Neb., 383; *Hallenbeck v. Hahn*, 2 Id., 394; *Sears v. Cottrell*, 5 Mich., 251; *Hurford v. Omaha*, 4 Neb., 347; *Turner v. Althaus*, 6 Id., 54; *Quick v. Whitewater*, 7 Ind., 570; *State v. Douglas Co.*, 18 Neb., 508; *State v. Stevenson*, Id., 416; Cooley, Const. Lim., 182; *In re Oliver*, 17 Wis., 681; *Rice v. State*, 7 Ind., 332; *Stocking v. State*, Id., 326; *Brown c. Buson*, 24 Id., 194; *Lucas v. Board*, 44 Id., 524; *Groesch v. State*, 42 Id., 547; High, Ext. Rem., sec. 33; *State v. Sch. Fund*, 4 Kan., 261.

*William Leese, Attorney General,* on the same side, cited: *Crosby v. Lyon,* 37 Cal., 242; *Dist. Twp. Dubuque v. Judge,* 13 Ia., 250.

NORVAL, J.

This is an original application for a peremptory writ of *mandamus* to compel the respondent, as county treasurer of Richardson county, to pay the relator, as treasurer of school district No. 84, of said county, certain moneys derived from certain taxes levied and assessed for the support of the schools in said school district.

The petition alleges, in substance, that the relator is the treasurer of school district No. 84, in Richardson county, and that the respondent is the treasurer of said county; that in the year 1875 Muddy precinct, in said county, and in which said school district is situated, issued its bonds to the amount of $16,000, to aid in the constructing of the Midland Pacific railroad through said precinct and school district, and that said bonds are outstanding and unpaid; that said railroad runs through said school district, but that several of the other school districts of said precinct are not touched by said railroad; that for the fiscal years 1887, 1888, and 1889 taxes were levied for state, county, and school purposes upon the property of said railroad company situated in said precinct, including the road-bed, right of way, and superstructures thereon, main and side tracks, depot buildings and depot grounds, and that said taxes have been duly paid to the treasurer of said county; that the taxes so paid for the year 1887 were $800, of which amount $65.45 were levied and collected for said school district; for the year 1888 there were paid $700, of which amount $79 were levied and collected for said school district; and for the year 1889 there were paid $800, of which amount $75.18 were levied and collected for said school district; that the respondent has said moneys in his hands and re-

fuses to pay the same to the treasurer of said school district, although the same has been duly demanded; that the county board of said county on June 9, 1887, made an order that all revenue derived from taxation upon said railroad property in said precinct, as well as in the other precincts in said county, should be set apart as a special fund and be applied exclusively to pay the interest and principal of the bonds issued by said precincts to said railroad company as provided by sections 1, 2, and 3 of article 7 of chapter 77 of the Compiled Statutes; that the treasurer of the several school districts affected by said order, and entitled to a portion of the moneys so collected by the respondent, have demanded of him their several parts; that the relator, being in doubt as to his duties in the premises, has refused to distribute said moneys among the several funds as required by law, or to pay any part thereof to any of the school districts, and that the moneys so paid to the respondent have not been applied to any purpose, but remain in his hands.

The defendant demurs to the petition, on the ground that the facts therein stated are insufficient to constitute a cause of action.

The defendant bases his refusal to pay over the money upon the act of the legislature entitled "An act setting aside the revenue arising from the taxation of works of internal improvement to pay the bonds issued to construct or complete the same," which took effect February 20, 1875.

Section 1 reads as follows: "That if any township, precinct, incorporated city, or village in this state shall issue any bonds to aid in the construction or completion of any works of internal improvement, the revenues arising from the taxation of such internal improvements shall be set apart forever to pay the interest and principal upon said bonds until the same shall be fully paid; and in the event that such revenues shall not be sufficient to pay such bonds at their maturity, such revenues shall still be set apart and shall be credited to the general fund required from such

State, ex rel. Ahern, v. Walsh.

township, precinct, incorporated city, or village, before such tax list is extended, until the same shall be fully reimbursed." Sec. 3 provides that "The treasurer having control of such revenues shall keep the same in a separate fund for the purpose aforesaid."

The money in controversy was not levied for the purpose of paying the bonds of Muddy precinct, but for school purposes. The defendant seeks to divert it from the specific object for which it was levied and collected, and appropriate it for the purpose of paying the principal and interest of said bonds as provided by the act above referred to.

The relator claims that said act conflicts with certain provisions of the state constitution and is therefore void.

It will be noticed that the legislative enactment of 1875, which appropriates and sets apart the moneys arising from the taxation of internal improvements to pay the principal and interest upon the bonds issued to aid in the construction of the same, was passed prior to the adoption of the present constitution. The old constitution contained no provision requiring that the levy of taxes should be uniform, nor did it contain a limitation upon the legislative power of imposing or distributing taxes. It therefore cannot be successfully contended that the act of 1875 was unconstitutional at the time of its passage.

The petition alleges that Muddy precinct issued its bonds in the sum of $16,000 to aid in the construction of the Midland Pacific railroad in the year 1875, but it contains no averment that they were issued after November first of that year, the date the present constitution took effect.

It is stated in the brief of the respondent, and is not disputed by the other side, that the bonds were voted and issued after the passage of said law, but before the formation and adoption of the present constitution. We are therefore called upon to determine whether or not said law contravenes any of the provisions of the constitution of

1875, and if so, whether such subsequent constitutional prohibition affects rights previously acquired under the said law.

Section 1 of article 8 of the constitution reads, that "The legislature shall provide such revenue as may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property and franchises, the value to be ascertained in such manner as the legislature shall direct," etc. The section has been frequently construed by this court, and the uniform holding has been that it requires that the rate of assessment and valuation of property shall be uniform throughout the district in which the tax is levied. It allows no discrimination, but each person and corporation must be taxed according to the value of his, her, or its property. It is perfectly clear that any statute which has the effect to require taxes to be levied upon a basis which is not uniform is repugnant to the above section of the constitution.

The effect of sections 1 and 3 of the act of 1875 is to exempt the property of a railroad in a precinct which has issued bonds to aid in the construction of the road, from paying any state, county, precinct, or school district tax, so long as such bonds are outstanding. In the case at bar, the taxes levied and collected on the property of the railroad company situated in the school district for school purposes are set apart by the act in question to pay the said bonds issued by the precinct in which the school district is located. The amount of such taxes must be made up by increasing the taxes on all other property in the school district. The appropriating of the money levied and collected upon the railroad property in this precinct for county purposes must be met by increasing the levy upon all the other taxable property of the county, thereby indirectly making the property in the county outside of Muddy precinct bear a portion of the bonded indebtedness of the

precinct.   Again, the petition shows that the railroad does not run through several of the school districts in Muddy precinct.   The property in the school districts through which the railroad is located is, to the amount of school moneys appropriated by this law, indirectly compelled to bear more than its just proportion of the precinct bonds. The act is therefore in contravention of section 1, article 9, of the constitution.  (*National Bank v. Barber*, 24 Kan., 534; *Crosby v. Lyon*, 37 Cal., 242; *Sleight v. People*, 74 Ill., 47; *Allhands v. People*, 82 Id., 234.)

The California case is quite similar to the one at bar. Under the provisions of an act of the legislature of California, Placer county subscribed to the capital stock of the Central Pacific Railroad Company, and issued its bonds in payment for the same.   For the purpose of redeeming the bonds the act created a "railroad fund," to which all the dividends, issues, and profits arising from such subscription, "together with the taxes that may be paid by said company to said county from time to time," are apportioned until the bonds are paid.   A school tax was levied upon all the taxable property in the county, including the property of the railroad company.   The company paid into the treasury of the county, under the levy, $1,034.12.   The superintendent of common schools for the county applied for a writ of *mandamus* to compel the auditor of the county to apportion to the school fund of the county said moneys. The court held that the statute setting apart the moneys to the railroad fund had the effect to exempt the railroad company from the payment of a school tax lawfully levied upon its property, and was in violation of section 13, article 11, of the constitution of that state, which provides that "taxation shall be equal and uniform throughout the state."

The act of 1875 also conflicts with section 4, article 8, of the constitution, which provides that "All other grants, gifts, and devises that have been, or may hereafter be made to

the state, and not otherwise appropriated by the terms of the grant, gift, or devise, the interest arising from all the funds mentioned in the preceding section, together with all the rents of the unsold school lands, and such other means as the legislature may provide, shall be exclusively applied to the support and maintenance of common schools in each school district in the state."

This section is almost identical with section 2 of article 9 of the constitution of California, and section 8 of article 9 of the constitution of Iowa. The court of last resort in each of these states has held that the words, "and such other means as the legislature may provide," include any fund raised by taxation for school purposes, levied under legislative authority, and that any law having for its object the diversion of such fund to a different purpose is unconstitutional and void. (*District Township of Dubuque v. County Judge*, 13 Ia., 250; *Crosby v. Lynn, supra.*) With that construction we are satisfied. The intent and meaning of the last clause of section 4 of article 8 of our constitution is that moneys raised by taxation for school purposes "shall be exclusively applied to the support and maintenance of common schools in each school district in the state."

As stated elsewhere, the bonds of Muddy precinct were issued prior to the adoption of the present constitution. Its provisions cannot affect rights previously acquired. The provisions of the act of February 20, 1875, entered into and formed a part of the contract or obligation of the precinct. The moneys arising from the taxation of the property of the railroad company in the precinct were pledged to the payment of the bonds. The right of the bond holder to have this money applied according to the provisions of the law in force when the indebtedness arose the state could not destroy or take away by subsequent legislative enactment or by adopting a constitution. (*Van Huffman v. Quincy*, 4 Wall., 552; *Fletcher v. Peck*, 6

Cranch, 87; *White v. Hart,* 13 Wall., 646; *Wilmington R. R. Co. v. Reid,* Id., 264; *Pacific R. R. Co. v. Maguire,* 20 Id., 36; *Brooklyn Park Co. v. Armstrong,* 45 N. Y., 234; *Von Baumbach v. Bade,* 9 Wis., 559; *Oatman v. Bond,* 15 Id., 20.)

In *Van Huffman v. Quincy, supra,* the question here presented was fully considered and decided by the supreme court of the United States. The city of Quincy, in the state of Illinois, issued its bonds under the provision of an act of the legislature of that state, which among other things provided for the levy and collection of a special tax to pay the interest on the bonds, and that the amount so raised should not be appropriated to any other purpose. Subsequently, the legislature passed a law which prohibited the city from levying a tax to exceed fifty cents on the one hundred dollars in any one year to pay the debts and meet the general expenses of the city. The full amount of tax authorized to be imposed by the act was levied, which was scarcely sufficient to pay the current expenses of the city. The court in the opinion say, "It is equally clear that where a state has authorized a municipal corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied. The state and the corporation, in such cases, are equally bound. The power given becomes a trust which the donor cannot annul, and which the donee is bound to execute; and neither the state nor the corporation can any more impair the obligation of the contract in this way than in any other. (*People v. Bond,* 10 Cal., 570; *Dominick v. Sayre,* 3 Sandf., 555.) The laws requiring taxes to the requisite amount to be collected, in force when the bonds were issued, are still in force for all the purposes of this case. The act of 1863, in so far as it affects these bonds, is a nullity. It is the duty of the city to impose and collect the taxes in all respects as if that act had not been passed."

The same principle was recognized and applied by the same court in *White v. Hart, supra.*

The case of *B. & M. R. R. Co. v. Saunders County,* 17 Neb., 318, bears upon the question we are now considering. In that case it appears that Saunders county in the year 1877 issued its bonds under the internal improvement law of 1869 to the O. & R. V. Ry. Co. in the sum of $140,000. The proposition under which they were voted and issued provided for a levy of an annual tax to pay the interest upon the bonds as the same became due. The legislature in 1875 passed an act entitled "An act to authorize the registration, collection, and redemption of county bonds." The fifth section provides for the levy of a tax upon the taxable property of the county to pay the interest on such bonds, and that the county clerk shall "place the same upon the tax roll of the county, in a separate column or columns designating the purpose for which said taxes are levied, and the said taxes shall be collected by the county treasurer in the same manner that other taxes are collected."

A levy of ten mills on the dollar was made in 1879 on the taxable property of the county to pay the interest on its said bonds. The plaintiff brought suit to enjoin the collection of the tax, claiming that under the provisions of section 26 of the act of 1879, entitled "Counties and County Officers," the levy was void. This section provides: "Whenever the county board shall deem it necessary to assess taxes, the agregate of which shall exceed the rate of one dollar and fifty cents per one hundred dollars valuation of the property of the county, except when such excess is to be used for the payment of indebtedness existing at the adoption of the constitution, the county board may, by an order entered of record, set forth substantially the amount of such excess required, and the purpose for which the same will be required, and if for the payment of interest or principal, or both, upon bonds, shall, in a general way, desig-

nate the bonds and specify the number of years such excess will require to be levied, and provide for the submission of the question of assessing the additional rate required, to a vote of the people of the county at the next election for county officers after the adoption of the resolution.  *  *  * If the proposition for such additional tax be carried, the same shall be paid in money, and in no other manner."

It was ruled that these provisions had no application to valid bonds issued before the section took effect, "nor indeed does the legislature possess the power to impair the validity of a contract by restricting the levy of taxes below what is required to pay lawful interest upon valid bonds already issued."

We therefore hold that the act of February 20, 1875, is in force as to all internal improvement bonds issued by a township, precinct, city, or village after the passage of that act and prior to the adoption of the present constitution. It follows that the relator is not entitled to the relief demanded.    The writ is

DENIED.

THE other judges concur.