REQUESTED BY: Senatory Howard Lamb Nebraska State Legislature State Capitol, Room 2108 Lincoln, Nebraska 68509
Dear Senator Lamb:
You have asked our opinion as to whether LB 954 is constitutional in its method of distributing $70,000,000 for property tax relief. The main provisions of the bill appear to pass constitutional muster, but there are some provisions dealing with bonds issued by technical community college areas which cause some concern, and probably should be amended or clarified.
Section 1 of the bill provides that for fiscal year 1982-83 the Legislature shall appropriate an additional $47,265,000 to the School Foundation and Equalization Fund, to be distributed pursuant to § 79-1334. Neb.Rev.Stat. §79-1334 (Supp. 1981) provides for a somewhat complex system of distributing state aid to school districts based upon the number of pupils in each district in kindergarten, grades one through six, grades seven and eight, and grades nine through twelve, with each category getting a different rate of aid per pupil. We have no reason to believe that the different rates for the different grade levels are unreasonable, and distribution to the districts on a per-pupil basis is certainly not irrational. We have never suggested that the present distribution under § 79-1334 is invalid, and simply adding more money to be distributed under that section would not have any effect on its constitutionality.
Sections 2 through 16 of the bill amend the statutory provisions dealing with technical community colleges. It changes the nature of the colleges, as reflected in the amendment of § 79-2636. That section now describes them as locally governed and locally supported. Section 2 of the bill would amend this to describe them as state supported and locally managed. We will not attempt to analyze the other changes made in the management of the colleges, as these changes are not particularly germane to your concern.
Neb.Rev.Stat. § 79-2650 (Supp. 1981) now authorizes a property tax levy for the support of technical community college areas. LB 954 would repeal this section, and section 15 of the bill provides that after the effective date of the bill, no property tax shall be levied by the area boards.
Section 9 of the bill provides that for fiscal year 1982-83 the Legislature shall appropriate $21,514,000 for the operation of the technical community college areas, and $2,221,000 for the redemption of outstanding bonds of the colleges. It also provides that each year thereafter the Legislature shall appropriate such sums as are necessary for the operation of the technical community college areas. Section 6 requires the board of each technical community college area to submit a budget to the state board for its approval. Section 8 requires the approval of the state board of such budgets, and section 14 requires the state board to submit the budgets to the Director of Administrative Services, and provides for appropriations by the Legislature for the support of each college area.
Article VII, Section 1, of the Constitution provides that the Legislature shall provide for the free instruction in the common schools of all persons between the ages of five and twenty-one years, and may provide for the education of other persons in educational institutions owned and controlled by the state or a political subdivision thereof. There is no question but that an appropriation for the support of the technical community college areas is for a public purpose. If the Legislature decides that they should be supported out of the state treasury rather than by local property tax levies, that is a matter addressed to the discretion of the Legislature.
Section 15 of the bill provides in part:
 Whenever any technical community colleges area has contracted to redeem bonds used for the construction or acquisition of facilities, the State Board of Technical Community Colleges shall redeem the bonds in accordance with the provisions of the bonds unless such provisions prohibit redemption by any entity other than the original issuer. If bond provisions prohibit redemption by the state board, the bonds shall be redeemed by the issuing entity, and an agreement shall be entered into between such entity and the state board under which the state board shall compensate the issuing entity for the value of the bonds being redeemed.
If this language is construed to constitute an assumption of liability for the payment of the bonds by the state, it is in violation of Article XIII, Section 1, of the Nebraska Constitution. We believe that the state could voluntarily pay off the bonds, so long as it did not assume any legally binding obligation to do so. The first paragraph of section 15, in saying that the State Board of Technical Community Colleges `shall redeem' the bonds, seems to give the force of law to the redemption of the bonds by that board, arguably enforceable by the holders of the bonds. This would violate Article XIII, Section 1. Clarification of this paragraph is necessary, to eliminate any such construction.
Neb.Rev.Stat. § 79-2648 (Reissue 1976) authorizes the issuance of revenue bonds and general obligation bonds by area boards for specific purposes. It further provides that revenue bonds shall be subject to the provisions of §§ 79-1438.04 to 79-1438.12. Section 79-2650 (Supp. 1981) authorizes a tax levy for the purpose of providing a capital improvement fund and bond sinking fund as provided in § 79-2648, with the power to levy such tax to expire on June 30, 1988. But LB 954 would repeal the authority to impose the tax to redeem the bonds, by the repeal of § 79-2650, and the state would be under no legal obligation to appropriate money to redeem them, since, as previously shown, such a legal obligation is prohibited by our Constitution. The holders of the bonds would therefore have no legally enforceable means of securing payment of the bonds.
We believe that the repeal of the portion of § 79-2650 authorizing a levy for the retirement of general obligation bonds before the redemption of all bonds issued in reliance upon it is prohibited by Article I, Section 10, of the Federal Constitution, which provides that no state shall pass a law impairing the obligation of contracts. We find this discussion of the subject in 156 A.L.R. at page 1266:
 After the issuance of bonds or other obligations of a municipality or political subdivision, any legislation which has the effect of withdrawing the taxing power of the obligor or of limiting or diminishing those powers to such an extent as to deprive it of the means of paying the outstanding obligations impairs the obligations of the contracts in violation of the Federal Constitution.
Numerous cases, including those of the United States Supreme Court, and two from Nebraska, Burlington M. R. R.Co. in Nebraska v. Saunders County, 17 Neb. 318,22 N.W. 560 (1885), and State v. Walsh, 31 Neb. 469, 48 N.W. 263
(1891), are cited in support of that proposition.
Section 79-2648 also authorizes the issuance of revenue bonds which shall be subject to the provisions of §§ 79-1438.04 to 79-1438.12. These sections require that such bonds be paid out of revenue from buildings whose earnings are pledged to the redemption of the bonds. Obviously, the discussion about general obligation bonds applies here. The pledge of earnings of the designated buildings must continue in force, and, while the state can voluntarily appropriate money to redeem the bonds, it cannot bind itself to do so in the future.
We also note that the court may find that the operation of technical community colleges is once again a state function, under the amendments effected by LB 954. The court found that it was a state function in the case of State exrel. Western Nebraska Technical Community College Area v.Tallon, 192 Neb. 201, 219 N.W.2d 454 (1974), and that a tax levied for the support of such colleges violated Article VIII, Section 1A, of the Constitution. Heavy reliance was placed on the fact of state control and assumption of the primary burden of financial support. The Legislature then amended the act, and in State ex rel. Western TechnicalCommunity College Area v. Tallon, 196 Neb. 603,244 N.W.2d 183 (1976), the court held the operation of the colleges was no longer a state function.
If the court were to hold it was once again a state function, the question would arise as to whether a tax levy to redeem bonds would violate Article VIII, Section 1A. In our opinion it would not. As previously shown, such a tax levy authorization is constitutionally mandated. The redemption of previously issued bonds is not a state function, if the purpose for which the bonds were issued was not a state function at the time of issuance. We would therefore be prepared to defend a tax levy for the redemption of bonds outstanding on the effective date of LB 954 from such an attack.
We must also point out one other possible constitutional problem that may arise under this bill. Article VII, Section 13, of the Nebraska Constitution provides that the general government of the state colleges as now existing, `and such other state colleges as may be established by law,' shall be vested in a board, the composition and appointment of which is provided in the Constitution. Such a board, of course, now exists. However, section 7 of LB 954 creates a different board, called the State Board of Technical Community Colleges. Section 8 of the bill gives this board certain responsibilities with respect to the operation of the technical community colleges.
It certainly can be argued that LB 954 makes the technical community colleges `state colleges,' as contemplated by Article VII, Section 13, and that therefore the general government of them must be under the present State College Board, instead of the board created by the act. Nothing in the act indicates that the present board has any hand at all in the `general government' of the technical community colleges. This may be held to be a constitutional violation.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Ralph H. Gillan Assistant Attorney General