## NELSON vs. THE STATE.

*May 17 — June 4, 1881.*

CRIMINAL LAW AND PRACTICE. *Several counts: When general verdict of guilty sufficient.*

1. Under our statute which provides the same penalty for one who receives, conceals or aids in concealing property, knowing it to have been stolen, as is prescribed for the stealing of the property, where one is charged in separate counts with both crimes, a general verdict of guilty is sufficient, without specifying the count to which it relates.
2. The conviction in this case *held* to be sustained by the evidence.

ERROR to the Municipal Court for *Milwaukee* County.
*James Hickcox,* for plaintiff in error.
*H. W. Chynoweth,* Assistant Attorney General, for the state.

COLE, C. J.   The only question we have to consider in this case is, Was there sufficient evidence to warrant the finding of

the jury? The plaintiff in error, with one Monroe, was charged in one count with stealing $95 from the person of Seneca B. Powers, in Milwaukee, on the 10th of June, 1880. In another count he, with Monroe, was charged with the crime of receiving and concealing and aiding in concealing $95, the money of Powers, knowing the same to have been stolen. The jury found him guilty as charged in the information. The evidence is entirely conclusive as to the fact that Powers had his pocket picked by Monroe while he was upon the street near the Spring street bridge in the forenoon of the 10th of June. Powers testified that it was while the procession at the soldiers' reunion was passing along the street, that his pocket-book was stolen. He says he was in a great crowd, and that he felt some one taking his pocket-book from his pocket; that he reached back and seized the man, Monroe, who was the thief. Monroe struggled to get away in the crowd, but he held on to him until an officer came and took him in charge. However, before the officer came up, Powers demanded of Monroe his pocket-book, when the latter dropped it on the ground, saying, " There is your pocket-book." Powers picked it up, and found that money had been abstracted from it while out of his possession. Powers said there was a great crowd about him and much excitement; that persons tried to get between him and Monroe, and tried to break his hold on Monroe, some crying out, " Let the man alone; " " Break his head open; " and other like expressions. Powers testified that he thought the plaintiff in error was one of those who were trying to aid Monroe in getting away from him. It appears that in the struggle Monroe lost his hat, which, it is admitted, was found on the plaintiff in error, concealed under his coat, when he was arrested by the officer (just after the larceny was committed) on the east side of Spring street bridge, and taken to the station. The police officers also testified that they had seen the plaintiff in error and the man Monroe on the streets together at different times for two or three days; and that there was something about their

conduct or looks which aroused their suspicion.   It seems the plaintiff in error had been taken to the police station and examined by the chief of police on the morning of his arrival in Milwaukee, but had been let go.

The above, in brief, is the material testimony relied on by the prosecution to prove the participation of the plaintiff in error in the commission of the offense as charged.   The plaintiff in error was sworn in his own behalf.   He denied being in company with Monroe in Milwaukee at any time; said he did not even know him, and had never met him until Monroe was examined for the larceny.   He positively denied that he in any way aided or abetted in the criminal act, or had anything to do with it.   He explained how he happened to be in the crowd at the time Powers' pocket was picked, but did not give a very satisfactory explanation of how he came to have possession of Monroe's hat, or his reason for attempting to conceal it, or what he intended doing with it.   The jury evidently did not believe his testimony.   And his learned counsel now contends that the whole evidence, taken together, is entirely insufficient to warrant his conviction, and claims that it shows that *Nelson* had nothing whatever to do either in the commission of the larceny or in receiving or aiding in the concealment of the stolen money.   But we are of a different opinion. We think the jury might well have found from the criminatory facts proven on the part of the prosecution, that the plaintiff in error was a confederate of Monroe, and was aiding and assisting him in the commission of the crime.   It was certainly the province of the jury to weigh the testimony and to determine the credibility of the witnesses.   If the jury believed the statements of the witnesses sworn on the part of the prosecution, and discredited those made by the plaintiff in error, as they doubtless did do, there was sufficient testimony to sustain the verdict.

The learned municipal court instructed the jury that unless they were satisfied from the evidence, beyond a reasonable

doubt, that *Nelson* was coöperating with Monroe — was aiding and assisting him in stealing the money from Powers, — it was their duty to acquit him. Of course, there is a possibility that Powers, in the crowd which surrounded him and the excitement attending the larceny, might have been mistaken in supposing that *Nelson* was one of those who were active in aiding Monroe in getting away from him. But it was for the jury to determine, from all the circumstances, whether his testimony on that point was reliable.

There was a general verdict. Our statute provides that a person who receives, conceals, or aids in concealing, stolen property, knowing the same to have been stolen, shall receive the same punishment as is prescribed for the stealing of such property. Section 4417, R. S. In view of this statute, perhaps it was not necessary for the jury to state in their verdict under which count in the information they found the plaintiff in error guilty.

Upon the whole record, we think the judgment of the municipal court must be affirmed.

*By the Court.* — Judgment affirmed.