CHARLES W. PETERSON, APPELLANT, V. J. ED. HANCOCK, COUNTY TREASURER OF HOLT COUNTY, NEBRASKA, APPELLEE.

54 N. W. 2d 85

Filed June 6, 1952. No. 33172.

*Davis, Stubbs & Healey, Julius D. Cronin,* and *Harlan A. Bryant,* for appellant.

*Clarence S. Beck,* Attorney General, and *William T. Gleeson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, a resident, real-property owner, and tax-payer of Class I elementary school district No. 231, having an enrollment of less than five pupils, in Holt County, Nebraska, brought this action for himself and all others similarly situated, against defendant county treasurer, to have chapter 250, Laws of Nebraska, 1949, page 680, known as the Blanket Mill Tax Levy Act, now designated as sections 79-438.01 to 79-438.07, inclusive, R. R. S. 1943, declared unconstitutional and void; to enjoin the levying, assessing, collecting, or attempting to collect any part or all of the taxes purportedly authorized thereby; and for equitable relief. Defendant answered, admitting that plaintiff was a resident, real-property owner, and taxpayer as alleged, denying unconstitutionality of the act, and alleging that unless restrained he intended to perform his duties required thereby. He prayed for a declaration of constitutionality and for equitable relief.

After a hearing whereat evidence was adduced, the trial court rendered its decree, finding and adjudging the issues generally against plaintiff and in favor of defendant. Plaintiff's motion for new trial was overruled, and he appealed, assigning that the trial court erred in declaring the act constitutional. We sustain the assignment.

For clarity and brevity, the Blanket Mill Tax Levy Act will be hereinafter referred to as the act, and in discussing its provisions we will refer to the sections as they appear in chapter 250, Laws of Nebraska, 1949, page 680.

The pertinent facts are not in dispute. School district No. 231 in which plaintiff's property is located has

fewer than five pupils enrolled for the school year 1951-1952. For the 1950-1951 school year there were 31 elementary school districts in Holt County having fewer than five pupils, all of which operated and maintained their own schools, and 10 other such districts had no pupils. During the year 1951-1952 there were 22 such schools having fewer than five pupils and 16 of them operated and maintained their own schools.

On August 6, 1951, plaintiff tendered and offered to pay defendant, who refused to accept, the amount of all taxes levied against his property for all purposes, including all school district levies except the amount of a four-mill levy made under purported authority of section 2 of the act. Admittedly plaintiff's property was assessed for tax purposes at a valuation of $235,995 for 1950, and on August 3, 1950, there was levied thereon, concurrently with other lawful levies, a tax in the amount of four mills, and the amount of the tax to be derived as a consequence of such imposition upon plaintiff's property was $934.98.

No part of district No. 231 is separated from other elementary school districts by streams of water or other natural barriers, nor would any children presently residing therein be required to travel in excess of four miles over unsurfaced roads to the next school, so that such district does not come within the provisions of section 6 of the act.

On June 11, 1951, district No. 231 had $7.09 cash on hand. On said date there was in the hands of the county treasurer $848.89 belonging to such district, and there was $723 representing other outstanding and unpaid taxes for school purposes for said district. On that date the school board and electors at the annual meeting adopted a budget of $1,718.50 needed for operating expenses during the 1951-1952 school year, which amount was duly certified to the county clerk, and thereafter the county board of equalization levied a tax upon all property in the district of 3.8 mills for school purposes

upon an assessed valuation of $521,635, which, if all collected, would produce $1,982.21.

Thereafter on or about July 1, 1951, for "the first year" during which "no district shall lose its blanket tax" as provided in section 4 of the act, the district received back $633.25 from the county treasurer, same being the distribution to it from the 1950 blanket mill tax school levy of four mills made in Holt County by the county board of equalization. Such levy for 1951 was also four mills, no part of which was or could be distributed back to the district or others of like character because, as provided by section 4 of the act, in order to be eligible therefor: "After the first year" it "must have had an enrollment of five or more students for the school year immediately preceding this levy." Such sums went into a general fund and were apportioned to other eligible districts in the county, including two high school districts as provided by sections 4 and 5 of the act. The State Superintendent of Public Instruction furnished forms to all county superintendents to be used by them for the computation, allocation, and distribution of money from the blanket mill tax levy, and to carry out the provisions of the act, as provided therein.

After defining blanket tax levy as a minimum tax levy on all elementary school districts within a county, as more particularly set forth in section 2, and defining merging of districts, the act provides:

"Sec. 2. A blanket mill levy tax sufficient to raise two-thirds of the cost of operating the elementary school districts of a county shall be levied upon the actual value of all the taxable property in the elementary school districts of a county, except intangible property. The amount of this levy shall be determined by the county treasurer from figures based on the previous year's expenditures of the elementary school districts of the county, but in no instances shall this blanket tax levy exceed four mills.

"Sec. 3.   The returns from this levy shall be paid by the county treasurer on an order from the county superintendent to those districts that are eligible to receive these funds as provided in section 5 of this act.

"Sec. 4.   After the first year, to be eligible to receive these funds a district must have had an enrollment of five or more students for the school year immediately preceding this levy.   During the first year no district shall lose its blanket tax because of this provision. Nothing in this section shall prohibit a high school district from participating in such funds if it shall be eligible under the provisions of section 5 of this act nor a district which qualifies under section 6 of this act.

"Sec. 5.   The funds raised by the blanket mill levy tax shall be distributed as follows:   (1) The entire amount of the blanket tax collected on taxable property within a district shall be refunded to those districts that maintain school and have a total of five or more pupils enrolled; Provided, if the district does not require the total blanket tax, it shall receive only that portion needed; (2) those schools which contract for instruction of pupils shall receive an amount required for carrying out such contract and transportation of pupils, but in no case more than the blanket tax raised in such school district; (3) two-thirds of the remainder of the amount raised, after the payments required by subdivisions (1) and (2) of this section, shall be distributed equally to those districts that have an average daily attendance of five or more for the school year immediately preceding; and (4) one-third of the remainder, after the payments required by subdivisions (1) and (2) of this section, shall be apportioned to the eligible districts on the basis of their average daily attendance; Provided, that no district shall receive more funds under subdivisions (3) and (4) of this section than is required for school purposes.   If a high school district shall contract for elementary pupils, it shall qualify as a unit for distribution under subdivisions (3) and (4) of

this section the same as an elementary school district if five or more such pupils are taught in said high school district under contract with an elementary district or districts.

"Sec. 6. When streams of water, other natural barriers, or extreme distances that pupils are required to travel make the merger of school districts impractical, those districts having an enrollment of five or less shall become eligible for payment under subdivision (1) of section 5 of this act where an application is made to and approved by the county superintendent. The term extreme distances, as referred to in this section, shall mean that any of the pupils of that district would be required to travel in excess of four miles over unsurfaced roads to the nearest school."

We are not here particularly concerned with the first year of operation since this action necessarily involves only the levy and payment of the second year and subsequent levies, which are distributed on an entirely different basis. By simple computation it will be observed that a four-mill levy on an assessed valuation of $521,635 upon the property in district No. 231 will raise a fund of $2,086.54, an amount to be paid by the taxpayers therein, including plaintiff, over and above their own lesser regular 3.8 mill levy for the maintenance and operation of their school, and under the provisions of the act none of such larger amount will be returned to the district. Rather, all of it, a sum considerably in excess of the amount required to maintain and operate their own school, will be distributed to other elementary and high school districts solely for their respective local purposes, and thus proportionately reduce their regular school district levy.

At the outset plaintiff argued that the act was unconstitutional as in violation of Article III, section 14, Constitution of Nebraska, which provides in part: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title. And no law shall

be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed."

Plaintiff first predicated his argument upon the contention that the title is fatally defective in that it failed to disclose that school districts having fewer than five pupils could not participate in distribution of the proceeds of the tax; and second, that the act is amendatory of preexisting laws without reference thereto. We conclude that the contentions have no merit.

To restate the long title herein would serve no purpose. It is sufficient for us to say that it appears therefrom that the act has but one general subject or object, to wit: the levy of a blanket mill tax for the support of certain elementary school districts in the county, and the title expressly gives notice that it contains provisions prescribing a method of distribution thereof.

In Midwest Popcorn Co. v. Johnson, 152 Neb. 867, 43 N. W. 2d 174, this court held: "Where a bill has but one general object, no matter how comprehensive that object may be, and contains no matters not germane thereto, and the title clearly expresses the subject of the bill, it does not violate Article III, section 14, of the Constitution.

"Article III, section 14, of the Constitution, does not require that the title to an act shall be a complete abstract of the bill. If the act contains but one subject and that subject is clearly expressed in the title, the constitutional requirements have been met, even though the title contains duplicitous or extraneous provisions not necessary to its validity."

In Affholder v. State, 51 Neb. 91, 70 N. W. 544, it is said: "But this constitutional provision should be liberally construed, and so construed as to admit of the insertion in a legislative act of all provisions which, though not specifically expressed in the title, are comprehended within the objects and purposes of the act as expressed in its title; and to admit all provisions

which are germane, and not foreign, to the purposes of the act as expressed in its title." See, also, Van Horn v. State, 46 Neb. 62, 64 N. W. 365.

The case of Wayne County v. Steele, 121 Neb. 438, 237 N. W. 288, relied upon by plaintiff, is clearly distinguishable and not controlling. Therein it was concluded, under circumstances not comparable with those at bar, that the title "wholly silent as to penalties" was plainly not comprehensive enough to authorize the penalty provisions of a simple nepotism act.

With regard to plaintiff's second defective title contention, he argued that the act changed and amended sections 79-431 and 79-432, R. R. S. 1943, making an intelligent levy impossible. We conclude otherwise.

Section 79-431, R. R. S. 1943, provides that the school board shall, prior to the annual meeting in each year, prepare an estimate showing the amount of money required for maintenance of the school in the manner provided by law during the coming school year. Section 79-432, R. R. S. 1943, simply relates to limitations of the levy for school purposes.

In Union Pacific R. R. Co. v. Troupe, 99 Neb. 73, 155 N. W. 230, this court held: "When a school district has money in its treasury available for the support of the school during the ensuing school year, it is bound to take that fact into account in fixing the tax levy, and the levy should be made for no more than will approximately raise the difference between the amount on hand and the amount determined as necessary to meet the expenses of the district for the ensuing school year."

In that connection the act here involved simply provides certain school districts with another source of income which must be taken into account in making their estimate, which, with aid of the county superintendent, can be done as intelligently as it would be to take into account any money left in its treasury from the previous year.

In any event, the rule in this jurisdiction is: "Where

an act is passed as original and independent legislation and is complete in itself so far as applies to the subject matter properly embraced within its title, the constitutional provision respecting the manner of amendment and repeal of former statutes has no application." Stewart v. Barton, 91 Neb. 96, 135 N. W. 381. See, also, Scott v. Dohrse, 130 Neb. 847, 266 N. W. 709; State ex rel. Beal v. Bauman, 126 Neb. 566, 254 N. W. 256; State ex rel. City of Columbus v. Price, 127 Neb. 132, 254 N. W. 889; State ex rel. Kaspar v. Lehmkuhl, 127 Neb. 812, 257 N. W. 229. In Live Stock Nat. Bank v. Jackson, 137 Neb. 161, 288 N. W. 515, it is said: "The modern rule is: 'Where an act does not purport to be amendatory, but is enacted as original and independent legislation, and is complete in itself, it is not within the constitutional requirement as to amendments, though it may, by implication, modify or repeal prior acts or parts thereof.' 1 Lewis' Sutherland, Statutory Construction (2d ed.) 446, sec. 239." Such rules are controlling here.

In Board of Education v. Moses, 51 Neb. 288, 70 N. W. 946, relied upon by plaintiff, the act was not complete but clearly amendatory only. It is therefore distinguishable from the case at bar.

On the other hand, we do conclude that the act is unconstitutional for other reasons hereinafter discussed. In doing so, we have not been unmindful of the statement appearing in Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729, that: "We quite agree that, in construing an act of the legislature, all reasonable doubt must be resolved in favor of constitutionality. Likewise, it has been held that, if a statute is subject to more than one construction, one of which would make the act constitutional and the other unconstitutional, this court is required to adopt the former. Hinman v. Temple, 133 Neb. 268, 274 N. W. 605; Abie State Bank v. Weaver, 119 Neb. 153, 227 N. W. 922." We have also observed the rule that: "The court in considering the meaning of a statute should if possible discover the

legislative intent from the language of the act and give it effect." Armstrong v. Board of Supervisors, 153 Neb. 858, 46 N. W. 2d 602.

Article VII, section 6, Constitution of Nebraska, provides: "The legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." However, such provision is not self-executing and in enacting legislation thereunder the Legislature is of course restrained by other related limitations of the Constitution. State ex rel. Shineman v. Board of Education, 152 Neb. 644, 42 N. W. 2d 168; State ex rel. Caldwell v. Peterson, 153 Neb. 402, 45 N. W. 2d 122.

In that connection, Article VIII, section 1, Constitution of Nebraska, provides: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property." Article VIII, section 4, Constitution of Nebraska, also provides: "The Legislature shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever."

The act here involved, when considered in pari materia with other related statutes as must be done, deals with both the county and all school districts therein. They are two well-recognized separate governmental subdivisions of the state. The county was not made a school district. It was only a taxing unit for elementary school districts therein, which remained intact as such districts, which, "once lawfully established retain their character and territorial integrity until such time as

they shall be divided, changed or modified in some manner authorized by law." Whelen v. Cassidy, 64 Neb. 503, 90 N. W. 229.

The act contemplates and provides for the levy of two separately characterized taxes for the same purpose. One is the blanket mill levy upon the actual value of all tangible taxable property in the elementary school districts in the county sufficient to raise two-thirds of the cost of maintaining and operating such districts, to be determined by the county treasurer based upon the previous year's expenditures, but not to exceed four mills. The other is the regular maintenance of school levy to be made in each district upon all taxable property of such district, determinable in the light of the money then on hand and the proportionate share, if any, distributable to them of the blanket levy on all districts in the county.

In that connection, section 4 of the act provides that an elementary district, although subject to both taxes "must have had an enrollment of five or more students for the school year immediately preceding this levy" in order "to be eligible to receive these funds * * *." On the other hand, as provided by section 5, "The entire amount of the blanket tax collected * * * within a district shall be refunded to those districts that maintain school and have a total of five or more pupils enrolled; * * *" provided, that, "if the district does not require the total blanket tax, it shall receive only that portion needed; * * *." Of the balance remaining, schools which contract for instruction of pupils shall receive the amount of the contract and transportation. However, in the light of section 79-486, R. R. S. 1943, which provides that: "School districts, thus providing instruction for their children in neighboring districts, shall be considered as maintaining a school as required by law," and the blanket restriction of sections 4 and 5 of the act, only school districts having five of more pupils could in any event so participate in the blanket levy fund.

The balance of such fund is then distributed among all districts having an average attendance of five or more pupils. Two-thirds of it is divided equally among all such districts and the other one-third is "apportioned to the eligible districts on the basis of their average daily attendance; * * *." The latter distribution is even made to high school districts which teach five or more pupils, "under contract with an elementary district or districts." It appears then that such high school districts offer no benefits to any of the other elementary school districts except by contract already paid for by them.

The only conclusion that can logically be drawn is that districts having less than five pupils are required to pay the blanket levy on all their property into the fund for the sole benefit of districts with five or more pupils. As a result, the regular school district taxes in such districts are thereby released, discharged, or commuted at the expense of districts having less than five pupils, who are required not only to pay the blanket tax levy in full to others without any benefit to them, but also to pay all regular school taxes required to maintain the school in their own respective districts.

There is no standard provided in the act whereby districts having less than five pupils can voluntarily qualify for any distribution of the fund to them for which they are taxed. Concededly, the laudable intention of the Legislature by the enactment was by taxation processes to induce elementary school districts having less than five pupils to merge with neighboring school districts by consolidation or reorganization, and thus bring about proficiency and general school economy based upon a broader and greater tax base.

In that connection defendant argued that districts having less than five pupils could escape the alleged unconstitutionality of such taxes imposed upon them by

perfecting a merger or consolidation. However, if such contention had merit, a question which we do not decide, it has no application here because there are jurisdictional procedures which preclude such ipso facto voluntary action by any one district without the electoral consent of other districts concerned.

In that regard, section 79-402, R. R. S. 1943, provides: "The county superintendent shall create a new district from other districts, or change the boundaries of any district upon petitions signed by fifty-five per cent of the legal voters of each district affected." Further, the creation of a new district is subject to the limitations of section 79-405, R. R. S. 1943, and subsequent related sections. Sections 79-426.01 to 79-426.18, inclusive, R. R. S. 1943, also provide for the reorganization of school districts. Section 79-426.02, R. R. S. 1943, provides for: "(1) The creation of new districts; (2) the uniting of one or more established districts; (3) the subdivision of one or more established districts; (4) the transfer and attachment to any established district of a part of the territory of one or more districts; and (5) the dissolution or disorganization of any established district for any of the reasons specified by law." Related subsequent sections then provide for the creation of state and county committees for reorganization, who shall perfect and recommend plans therefor, whereupon as provided by section 79-426.15, R. R. S. 1943: "* * * the proposition of adoption or rejection of the proposed plan of reorganization shall be submitted at a special election to all the electors of districts within the county whose boundaries are in any manner changed by the plan * * *" and "Approval of the plan shall require a majority of all electors within each voting unit voting on the proposed plan."

As we view it, the blanket mill levy tax is also discriminatory as one levied upon one district of the county for the exclusive benefit and local purpose of other

districts and that it is not levied uniformly and proportionately.

City of Fremont v. Dodge County, 130 Neb. 856, 266 N. W. 771, relied upon by defendant, is distinguishable upon the facts and applicable law. In that opinion it is said: "It is true that inequality of tax assessments vitiates an act of the legislature, but inequality of distribution of the proceeds does not, provided the purpose be for the *public welfare of the whole taxing district."* (Italics supplied.)

In the afore-cited case, four municipalities asked for an accounting and payment to each of taxes previously collected on property within their borders under a county road tax levy expended and to be expended for the specific purpose of improving all the county roads, which benefited all of the taxpayers of the county, including those within the municipalities. Clearly the purpose there was for the public welfare of the whole taxing district, and we sustained an act providing that all funds derived therefrom should belong to the county as a county road fund for the benefit of all the county roads, which are used by every taxpayer of such a district. Here there results not only an inequality of tax levies but also the school districts having less than five pupils receive no benefit from the blanket tax levy.

In State ex rel. City of Omaha v. Board of County Commissioners, 109 Neb. 35, 189 N. W. 639, this court sustained the constitutionality of an act requiring the county to furnish rooms in the courthouse for municipal courts of any city in which is located the county seat of that particular county. In doing so, the court said: "The revenues of the county do not become the property of the county in the sense of private ownership, and the legislature has authority to prescribe the division and apportionment of money, raised by county taxation, between the county and a city within its limits. 37 Cyc. 1589. It is true that the legislature could not divert funds raised by one district to the use of another dis-

trict (Board of Commissioners v. Lucas, supra), since a tax levied for a public purpose must also be levied for the use of the district which is taxed. Should the legislature order that money be raised by one district and paid to another district, to be used for the sole benefit of that other district, that would be an exaction of money for the benefit of others than those who are taxed and clearly beyond what could be justified as taxation. 26 R. C. L. 72, sec. 51. * * * This is not a diversion of funds or property of the county to the use of persons who have not contributed by taxation to those funds. A large part of the contributions from which the courthouse was built was furnished by the city of Omaha. It is simply an apportionment of the use for general benefits and a direction as to how the property, procured by those funds, shall be used to the interest and benefit of the taxpayers in that particular taxing district." Such statement clearly defines a yardstick upon which constitutionality may be predicated. It is likewise distinguishable from the case at bar. Such case is cited in 61 C. J., Taxation, § 2235, p. 1522, to support the statement that: "It is a sound principle of taxation which prescribes that the benefits of taxation should be directly received by those directly concerned in bearing the burdens of taxation, so that a legislature cannot divert taxes raised by one taxing district to the sole use and benefit of another district." See, also, 61 C. J., Taxation, § 67, p. 136.

State v. Delaware Iron Co., 160 Minn. 382, 200 N. W. 475, involved constitutionality of a statute providing for a comparable county school tax levy, which tax and the proceeds thereof were apportioned "among the school districts of the county on the basis of their respective school enrollments during the school year last preceding." In the opinion it is said: "Appellants further contend that this act taxes one locality for the sole benefit of another and is void for that reason. We may concede that an act taxing one county for the sole benefit

of another, or one school district for the sole benefit of another, could not be sustained, but this is not such a statute. This statute makes the county a taxing unit for the support, in part, of the schools within it. The money produced by the county tax is to be apportioned to the school districts of the county on the basis of their respective school enrollments. Each district receives its proportionate part. The county tax contributes to the support of only those schools which are maintained for the benefit of the people of the county. That the legislature has power to impose such a tax has been settled too long and too firmly to require argument." A fortiori, after the first year the act involved in the case at bar taxes certain school districts for the sole benefit of others, and does not proportionately contribute to all of those schools which are maintained for the benefit of the people of the county.

The over-all general rule is stated in 1 Cooley, Taxation (4th ed.), § 314, p. 653, as follows: "A state purpose must be accomplished by state taxation, a county purpose by county taxation, and a public purpose for any inferior district by taxation of such district. This is not only just but it is essential. To any extent that one man is compelled to pay in order to relieve others of a public burden properly resting upon them, his property is taken for private purposes, as plainly and as palpably as it would be if appropriated to the payment of the debts or the discharge of obligations which the person thus relieved by his payments might owe to private parties. 'By taxation,' it is said in a leading case, 'is meant a certain mode of raising revenue for a public purpose in which the community that pays it has an interest. An act of the legislature authorizing contributions to be levied for a mere private purpose, or for a purpose which, though it be public, is one in which the people from whom they are exacted have no interest, would not be a law, but a sentence commanding the periodical payment of certain sums by one portion or

class of people to another.' This principle has met with universal acceptance and approval because it is as sound in morals as it is in law."

Also, as stated in 1 Cooley, Taxation (4th ed.), § 316, p. 663: "A state cannot tax itself for the benefit of the people of another state. So the imposing a tax on one municipality or part of the state, for the purpose of benefiting another municipality or part, violates the rule as to uniformity. No taxing district can be taxed for the exclusive benefit of another district."

Further, as stated in 1 Cooley, Taxation (4th ed.), § 314, p. 650: "In order to give validity to any demand made by the state upon its people under the name of a tax, it is essential not only that the purpose to be accomplished thereby shall be public in its nature, but it is equally essential, that the purpose shall be one which in an especial and peculiar manner pertains to the district within which it is proposed that the contribution called for shall be collected, and which concerns the people of that district more particularly than it does others."

In Morford v. Unger, 8 Iowa 82, it is said: "If there be such a flagrant and palpable departure from equity, in the burden imposed; if it be imposed for the benefit of others, or for purposes in which those objecting have no interest, and are, therefore, not bound to contribute, it is no matter in what form the power is exercised—whether in the unequal levy of the tax, or in the regulation of the boundaries of the local government, which results in subjecting the party unjustly to local taxes, it must be regarded as coming within the prohibition of the constitution designed to protect private rights against aggression, however made, and whether under the color of recognized power or not."

In Bromley v. Reynolds, 2 Utah 525, a regular school tax was levied on all property in the district, including railroad property. Section 19 of the act, relating to school district taxes, provided that any amount of any

such taxes paid by a railroad should be paid to the county treasurer and by him distributed to the several school districts in the county upon the order of the county superintendent, according to the school population. Thus, a part of the school district tax levied on railroad property therein was distributed to other districts. In that regard, the court said: "To carry out the provisions of section 19 the inhabitants of Echo school district must be assessed a larger amount for the reason that a part of the funds so raised is to be diverted to the use of other districts, and to that extent relieves the burdens upon the inhabitants of those districts. Either this increased taxation must be the result, or the individual patrons of the school in Echo district would be required to pay larger tuition fees to meet the ordinary expenses of the district, and in either case the provision is obnoxious to all the objections against appropriating of private property for private purposes, which can exist in any other case." See, also, State ex rel. Ahern v. Walsh, 31 Neb. 469, 48 N. W. 263, a comparable case.

In Board of Education v. Haworth, 274 Ill. 538, 113 N. E. 939, it is said: "The effect of the act of 1915 is to require the tax-payers in a district maintaining a high school to indirectly contribute to the tuition of persons residing in districts maintaining no such school, and thereby to contribute to the local and corporate purpose of furnishing an education to the children of such district. The tax-payers of the district maintaining a high school pay to make up the State school fund and then are deprived of a portion of it for the benefit of districts not maintaining any high school; and the same is true of a district not maintaining a high school which does not send any of its pupils to a high school in another district. The tax-payers of a high school district offering the advantages of a high school education are indirectly forced to assist in the education of pupils living in other districts. The act violates the fundamental

principle of uniformity and equality in taxation and contravenes section 1 of article 9 of the constitution."

High School District v. Lancaster County, 60 Neb. 147, 82 N. W. 380, 83 Am. S. R. 525, 49 L. R. A. 343, declared an act invalid which provided that students from a district without a high school should be admitted to any high school district in the county upon payment of 75 cents a week to the receiving district by the district from which the pupil came. The act was challenged upon the ground that such arbitrary payment would violate the rule of uniformity and result in commutation. In the opinion it was said: "We quite agree with counsel for plaintiff that, under this act, the county is the proper unit of taxation; but we have already shown that, in the event the cost of tuition should exceed or fall below the amount provided by section 3 of the act to be raised by taxing the property of the whole county, it would indirectly violate the rule of uniformity prescribed in section 6 of the article of the constitution named. It would also violate section 4 of said article, as an advantage would accrue to the taxpayers resident in the one or the other of the two portions of the county affected thereby, and it would clearly be a commutation of the taxes to be paid by the taxpayers resident in the one or the other of the two localities. It may be true that such commutation would be brought about indirectly, that is, in case the cost of tuition exceeded the amount provided to be paid by the general tax upon the whole county, the taxpayers resident within the school district would be compelled to supply the deficiency by another levy upon the property within such district, whence it would follow that the difference would be a commutation in favor of those portions of the county outside the district; or, in case the cost of tuition should fall below the specified amount, the taxpayers within the limits of the district would profit at the expense of those without its limits; and it is clear that in either event a commutation of taxes would re-

sult." In such case this court also specifically held that: "The constitution of this state requires not only that the valuation of property for taxation, but the rate as well, shall be uniform." See, also, Smith v. Barnard, 142 Or. 567, 21 P. 2d 204, citing High School District v. Lancaster County, *supra,* as supporting authority. The court therein said: "Since the taxpayers in districts 4, 45, 69, and 19 must pay the special tax under this law, as do all taxpayers in non-high school districts, and must also, by reason of the arbitrary basis of distribution as provided in section 35-4004, pay whatever is necessary to make up the deficiency, the practical effect of the law is to contravene the constitutional provision of this state relative to uniform taxation. * * * Dallas v. Love (Tex. Civ. App.), 23 S. W. (2d) 431, is squarely in point. In that case a statute was under consideration which required a school district to accept a non-resident pupil for instruction at a tuition less than the actual per capita cost of such instruction. It was held that the law was unconstitutional on the ground that it permitted unequal taxation and deprived the district receiving such pupil of due process of law. We note therein this significant language which we think is applicable to the case at bar:

" 'We do not believe, however, that it was ever, even remotely contemplated by the makers of our Constitution that, however essential a general diffusion of knowledge is to the preservation of liberties and rights, this essential purpose should be accomplished in disregard of other, equally sacred, provisions of the Constitution.' "

Wilkinson v. Lord, 85 Neb. 136, 122 N. W. 699, 24 L. R. A. N. S. 1104, never receded from the basic principles with regard to uniformity and commutation set forth in High School District v. Lancaster County, *supra.* It simply arrived at a different conclusion for want of pleading and proof that the tuition to be paid would fall below or exceed the expense of educating such a pupil.

Thereafter, Peterson v. Anderson, 100 Neb. 149, 158 N. W. 1055, involved an act which established a county

high school district with power to establish a high school and levy a tax for its maintenance upon all property in the county not in a district already having a high school. Obviously, all residents and property owners in the districts taxed had a right to send their children to such a high school, and they were therefrom benefited as directly as the residents of an elementary school district who may send their children to the elementary school. The basic law was therefore held valid, but it was pointed out that the law permitted free tuition to any pupil in the county and that some districts were excluded from the payment of tax to the county high school district, which was clearly invalid because it provided benefits for a district in which the property bore no part of the burden of taxation for the support of the county high school. The opinion, citing High School District v. Lancaster County, *supra,* said: "With respect to the provision for free tuition of all pupils in the county, we are satisfied this provision cannot be enforced so far as it applies to pupils residing in districts which bear no part of the burden of taxation for the support of the county high school."

In City Trust Co. v. Douglas County, 101 Neb. 792, 165 N. W. 155, this court construed Article VIII, section 1, Constitution of Nebraska, as inhibiting "the legislature from discrimination between taxpayers in any manner whatever."

In Steinacher v. Swanson, 131 Neb. 439, 268 N. W. 317, this court held that: "The legislature does not have the power to release or discharge a tax, such action being prohibited by section 4, art. VIII of the Constitution." Further, "Neither may the legislature circumvent an express provision of the Constitution by doing indirectly what it may not do directly." The opinion, quoting from County of Lancaster v. Trimble, 33 Neb. 121, 49 N. W. 938, said: " 'The legislature is without power to release any inhabitant or corporation from his or its proportionate share of taxes, nor can it confer

such authority upon county commissioners. * * * The legislature is powerless to confer such authority. It cannot do indirectly what the Constitution prohibits it from doing directly; that is clear. Wood v. Helmer, 10 Neb. 65, 68.' "

In State ex rel. Cornell v. Poynter, 59 Neb. 417, 81 N. W. 431, this court held: "The rule of uniformity prescribed by section 1, article 9, of the constitution, inhibits the legislature from discriminating between taxpayers in any manner whatever.

"Under section 4, article 9, of the constitution the legislature is powerless to pass a law releasing or discharging any individual or corporation or property from the payment of any portion of the taxes to be levied for state or municipal purposes." In the opinion, it is said: "The rule of uniformity inhibits the legislature from discriminating between taxpayers in any manner. See State v. Graham, 17 Nebr., 43. In every instance where this court has spoken upon the subject it has been determined that the legislature is powerless to relieve from the burdens of taxation the property of any individual or corporation, but that the constitutional rule of uniformity requires all taxable property within the taxing district where the assessment is made shall be taxed, except property specifically exempt by the fundamental law. This doctrine is entirely sound, and the language of the constitutional provision we have been considering will not authorize or permit of any other or different interpretation.

"By section 4, article 9, of the constitution the legislature, in plain and unequivocal language, is inhibited from enacting any law releasing or discharging any individual or corporation or property from their or its proportional share of taxes to be levied for state or municipal purposes."

In State ex rel. Bee Building Co. v. Savage, 65 Neb. 714, 91 N. W. 716, this court said: "The subject relating to the rule of uniformity has heretofore received

consideration by this court in the case of the State v. Osborn, 60 Nebr., 415. It is there held that the valuation of property for taxation must be uniform. Says the court in the opinion, at page 419: 'There is another cardinal rule of taxation, and that is that "every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises." Constitution, art. 9, sec. 1. And this rule of uniformity applies not only to the rate of taxation but as well to the valuation of property for the purposes of raising revenue. High School District No. 137 v. Lancaster County, 60 Nebr., 147. The constitution forbids any discrimination whatever among taxpayers. State v. Graham, 17 Nebr., 43; State v. Poynter, 59 Nebr., 417. * * *' "

In Atchison, T. & S. F. Ry. Co. v. Clark, 60 Kan. 826, 58 P. 477, 47 L. R. A. 77, the court said: "As some of the taxpayers appear to have been purposely excluded from the benefit and protection of the law, the tax, therefore, lacks that equality and uniformity essential to its validity. It is a discrimination against one taxpayer in favor of others, and is a denial of the equal protection of the law required by both state and federal constitutions. Absolute equality in taxation is, of course, unattainable, but a law, the manifest purpose and legitimate result of which is discrimination and inequality, cannot be sustained."

In State ex rel. City of Reno v. Boyd, 27 Nev. 249, 74 P. 654, the court said: "The purpose of an exaction from the public in the form of a tax or license, either for revenue or in the exercise of the police power, is for the benefit of the locality from which the money is collected. Any exaction laid upon a district or community in which it has no interest, or imposed for the benefit of others, to which it is not justly bound to contribute, is invalid."

In Newport Mining Co. v. City of Ironwood, 185 Mich. 668, 152 N. W. 1088, the court said: "While exact equality in taxation can never be achieved, intentional inequality of assessment invalidates the tax. Merrill

v. Auditor General, 24 Mich. 170; Auditor General v. Hughitt, 132 Mich. 311, (93 N. W. 621); Solomon v. Township of Oscoda, 77 Mich. 365, (43 N. W. 990); Auditor General v. Pioneer Iron Co., 123 Mich. 521, (82 N. W. 260)."

We conclude as aforesaid that portions of the act, to wit, sections 4 and 5 thereof, are unconstitutional as in violation of Article VIII, section 1, and Article VIII, section 4, Constitution of Nebraska, and in so concluding apply the rule that: "If portions of an act are unconstitutional and the remainder is so connected with the invalid portions that it cannot be upheld without doing violence to the legislative intent as a whole, the entire act must fall, * * *." Thorin v. Burke, 146 Neb. 94, 18 N. W. 2d 664.

It is elementary, of course, that when taxes are levied on property without authority of law a court of equity may enjoin collection thereof. Earl v. Duras, 13 Neb. 234, 13 N. W. 206; Hemple v. City of Hastings, 79 Neb. 723, 113 N. W. 187.

For the reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed, and the cause is remanded with directions to enter a judgment for plaintiff in conformity with this opinion. All costs in this court and the district court are taxed to defendant.

REVERSED AND REMANDED WITH DIRECTIONS.