STATE OF NEBRASKA EX REL. THE SCHOOL DISTRICT OF SCOTTSBLUFF ET AL., APPELLEES AND CROSS-APPELLANTS, v. P. COOPER ELLIS, COUNTY TREASURER OF SCOTTS BLUFF COUNTY, NEBRASKA, ET AL., APPELLANTS AND CROSS-APPELLEES, IMPLEADED WITH SCHOOL DISTRICT No. 2 ET AL., APPELLEES, STATE OF NEBRASKA EX REL. THE CITY OF SCOTTSBLUFF ET AL., INTERVENERS-APPELLEES.

70 N. W. 2d 320

Filed May 13, 1955. No. 33707.

*Straight Townsend,* for appellants.

*Mothersead, Wright & Simmons, Herman & Van Steenberg, Holtorf & Harris, R. M. Van Steenberg, Oscar E. Nelson, James W. Ponder, Jr.,* and *Willard F. McGriff,* for appellees.

*Davis, Healey, Davies & Wilson, Jack E. Lyman,* and *Neighbors & Danielson,* for interveners-appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

The appeal here presents for review the decree rendered in the disposition of three actions which were consolidated and tried to the court. In order that the matters presented may be properly understood it be-

comes necessary to set forth in considerable detail the background of the litigation and to outline the issues presented by the three cases as originally instituted.

In the year 1942 the Consumers Public Power District, a public corporation and political subdivision of the State of Nebraska, which will be hereinafter referred to as Consumers, pursuant to statutory authority, purchased property from the Western Public Service Company, a corporation, which was situated in various political subdivisions of Scotts Bluff County, Nebraska. Before the purchase taxes were assessed against the property purchased. These taxes were distributable in 27 school districts, 4 cities and villages, and 1 junior college district, and of course to the state and county. Since that time there has been consolidation of school districts but for the ultimate purposes of this opinion this is of no consequence.

On acquisition of the property by the contract of purchase entered into in conformity with requirements of statute Consumers became obligated to pay in lieu of taxes "to the State of Nebraska, county, city, village and school district in which such public utility is located" a sum equal to the amount which the "state, county, city, village and school district" received from taxation including occupation taxes from such property or from the person, firm, or corporation during the year immediately preceding the purchase or acquisition of such property. This obligation and requirement exists as long as Consumers continues to own the property. The statutory provision prescribing the requirement is section 70-651, R. R. S. 1943, as follows: "Whenever any such district shall purchase or acquire the plant or property of an existing privately owned public utility furnishing electrical energy for heat, light, power, or other purposes, for use within this state, such purchase shall be upon the condition expressed in the contract of purchase and instrument of conveyance that such district as long as it shall continue to be the

owner of such property, shall annually pay out of its revenue, to the State of Nebraska, county, city, village and school district in which such public utility property is located, in lieu of taxes, a sum equal to the amount which the state, county, city, village and school district received from taxation, including occupation taxes, from such property or from the person, firm or corporation owning the same during the year immediately preceding the purchase or acquisition of such property by such power district. The directors of any such district shall not incur any personal liability by reason of the making of such payments."

Consumers has annually fully performed its obligation in this respect.

The method for distribution was contained in section 70-653, R. S. 1943. The method simply was that the tax collecting officers should receive the money from Consumers and distribute it to the state and the political subdivisions as equivalents of what they received prior to 1942.

This method was followed through 1952 although section 70-653, R. S. 1943, was amended in 1947. By the amendment the tax collecting officers are "directed to receive and collect the same, and distribute all money so received to the state and governmental subdivisions entitled thereto proportionate to the respective tax levies for the current year of the state and governmental subdivisions entitled to participate in such distribution."

This amendment was disregarded until the year 1953 by the county treasurer who acted as tax collecting officer.

In 1953, P. Cooper Ellis, county treasurer, who is plaintiff in one of the actions and defendant in two of them, adopted a new and different method of distribution from the one previously followed. This party will be hereinafter referred to as Ellis.

He took the annual levy in dollars on the property in the county including the levy in dollars of the junior

college district, of each of four cities and villages, and each of the school districts, and apportioned the total received from Consumers in the proportions that the levies for the several political subdivisions bore to that total, without regard to the amount or value of the property located or previously assessed in the respective subdivisions of the county, and distributed the fund accordingly. He did this without counsel or advice from anyone.

The first of the three actions is by the State of Nebraska, on relation of the junior college district of Scottsbluff, against P. Cooper Ellis, county treasurer, and National Surety Corporation, the surety of the treasurer. In it the plaintiff, who will hereinafter be referred to as the college, charges that the distribution made by Ellis was improper and that it deprived the college of money which should have been distributed to it. The action is to recover the funds with interest and an attorney's fee.

The second action is by the State of Nebraska, on relation of the school district of Scottsbluff, against P. Cooper Ellis, county treasurer, and National Surety Corporation, the surety of the treasurer. The substantial claim is the same as that in the first action and the kind and character of relief prayed is the same.

The third action is by P. Cooper Ellis, county treasurer, plaintiff, against the County of Scotts Bluff, the cities of Scottsbluff and Minatare, the villages of Melbeta and McGrew, and 27 school districts, all in Scotts Bluff County, Nebraska.

To the extent necessary to set it forth the purpose of this action is to have interpreted and declared the proper method for allocation and distribution under section 70-653, R. R. S. 1943, of funds received by him as treasurer from Consumers under the provisions of section 70-651, R. R. S. 1943.

The first and second actions were decided in favor of plaintiffs and judgments were rendered in their favor

in amounts not necessary to set out here. Attorneys' fees were allowed in favor of attorneys for plaintiffs and against the county treasurer and the National Surety Corporation in each of the cases.

The city of Scottsbluff intervened in both cases and judgment was rendered in its favor. An attorney's fee was allowed for its attorney.

In the third case section 70-653, R. R. S. 1943, was interpreted and its meaning judicially declared. That declaration in the findings was "that the payments made in lieu of taxes to the various entities should be distributed to said taxing entities in amounts equal to the tax payments received by them prior to acquisition by the Public Power District of the theretofore taxed properties, and that apportionment of such payments should be made within the taxing entity in proportion to its current levies." The decree was to the same effect but it was worded slightly differently.

Effectually this was to say that the amendment of 1947 to section 70-653, R. S. 1943, had no relation to apportionment as between or among governmental subdivisions but that it had application to the apportionment by a subdivision to the purposes to be served by its levy.

Ellis filed a motion for new trial as did also the school districts, the junior college, and the State of Nebraska. The motions were overruled. From the decree and the order overruling the motions for new trial Ellis has appealed. The college and the Scottsbluff school district have cross-appealed from that part of the decree interpreting section 70-653, R. R. S. 1943.

It appears that a proper interpretation and application of sections 70-651 and 70-653, R. R. S. 1943, will furnish a basis and a plan for the disposition of all matters of dispute presented by these three actions. The decisions examined furnish little assistance in this interpretation except to the extent that they contain the legal principles with regard to which it must conform.

By the clear language of section 70-651, R. R. S. 1943, it was intended that the money to be paid in lieu of taxes was to be paid to the governmental subdivision in which the particular property acquired was located and had been taxed for the previous year. That was the statutory obligation and the obligations of the contract entered into pursuant to the statute. That statutory obligation has not been changed.

Therefore under this clear language if Consumers acquired property in a school district the district became entitled to receive the equivalent of what it had received in taxes for the previous year. If there was a city or village which levied taxes on this property it was entitled to receive in lieu of taxes what it had received the previous year. The county and state of course must be assumed to have levied taxes on such property the previous year. Each was entitled to receive in lieu of taxes what it received as taxes on this property for the previous year.

Section 70-653, R. R. S. 1943, in nowise changes or purports to change the obligation of Consumers under section 70-651, R. R. S. 1943. It does however by its terms change the method of distribution of the money payable in lieu of taxes on the property in the school district. Interpreted, it provides that the total of the money payable and applied to a situation where there are four coexistent governmental subdivisions, in lieu of taxes, to the school district, the city or village, the county, and the state, shall be distributed to the respective governmental subdivisions in the proportion that the levy of each for the current year bears to that total amount.

The same interpretation would be equally applicable where the number of subdivisions was either more or less than four.

As a hypothetical example, if the mill levy for the school district was 8 mills, that for the city or village was 6 mills, that for the county was 4 mills, and that for

the state was 2 mills, the total levies for the property in the district would be 20 mills. Then if the total payable in the school district in lieu of taxes was $2,000, the school district would be entitled to 8/20ths, the city or village 6/20ths, the county 4/20ths, and the state 2/20ths.

This interpretation flows logically and reasonably from the wording of the 1947 amendment to section 70-653, R. R. S. 1943.

The effect of this interpretation if applied does have the possible effect of changing from year to year the amounts receivable by coexisting governmental subdivisions from the total amount payable thereto by Consumers. And the objection is made substantially that this invalidates the amendment.

If in a literal sense this was a new and different plan for the distribution of tax funds it could not under the facts be said that there was a legal inhibition against it. Prior to 1947 all of the money raised in each particular school district was for the benefit of the public in the district. This was not changed by the amendment of 1947. The amendment of 1947 provided only a new method for distribution within the district for the benefit of the public in the district.

This court adheres to the principle that the Legislature has the power to take funds raised for one governmental subdivision and give them to another governmental subdivision if it is done for the benefit of the public in the taxing district. See, Turner v. Althaus, 6 Neb. 54; State ex rel. Jones v. Graham, 16 Neb. 74, 19 N. W. 470; State ex rel. City of Omaha v. Board of County Commissioners, 109 Neb. 35, 189 N. W. 639; City of Beatrice v. Gage County, 130 Neb. 850, 266 N. W. 777; City of Fremont v. Dodge County, 130 Neb. 856, 266 N. W. 771.

The rule is otherwise where the legislative effort is to transfer the funds raised for the benefit of one district or subdivision to another district or subdivision. In such event the act of the Legislature is invalid. See,

State ex rel. City of Omaha v. Board of County Commissioners, *supra;* City of Fremont v. Dodge County, *supra;* Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85. · If these funds are to be treated the same as tax funds and if the Legislature intended by the amendment that distribution should be made in accordance with the interpretation placed upon it by Ellis, the amendment would under this latter rule be invalid since that purpose would require the use of funds raised in one school district for the sole benefit of another or others.

As indicated the rule of the cases granting the right of the Legislature to take funds raised for one governmental subdivision and give them to another if it is done for the benefit of the public in the taxing district has reference to funds raised by taxation. The funds involved here, as has been made clear, are not funds raised by taxation but are funds paid in lieu of taxes. No good and sufficient reason has been made apparent why funds received according to law in lieu of taxes should not be subject to the same legislative control as funds raised by tax levies. We hold that they are so subject.

In the light of these rules and this analysis it becomes clear that the analysis made by the trial court in the decree of the issues presented by the third action is erroneous.

It becomes obvious from this that the judgments in the first and second actions are erroneous, at least, for the reason that the allotments made by the decree were based upon an incorrect formula. They must accordingly be reversed and remanded.

In relation to the judgments Ellis by his argument and propositions of law, and we think sufficiently although not specifically, by his assignments of error, raises the question of the propriety of a judgment against him in any event or for any amount. He contends that his acts, if wrong, constituted only an error of judgment in the performance of his official duties in a situation

wherein it was his duty to exercise judgment and discretion and that therefore there is no liability against him for his wrongful acts. In support of his position he cited Keifer v. Smith, 103 Neb. 675, 173 N. W. 685, and Harmer v. Petersen, 151 Neb. 412, 37 N. W. 2d 511.

The two cases cited express the principle contended for but they do not relate to a question of statutory interpretation and application. They relate to actions for damages for negligence in the performance of duty. The question is not briefed by the other parties to the actions. It would appear therefore that since the actions must be returned to the district court this issue should again be presented to that court along with the other issues.

In the actions wherein judgments were rendered against Ellis, judgments were also rendered in like amounts against his surety, the National Surety Corporation, and as pointed out an attorney's fee was assessed against it. This was done under the authority of section 44-359, R. R. S. 1943. This court has held that this statute has application to actions based upon the bonds of public officials. City of Scottsbluff v. Southern Surety Co., 124 Neb. 260, 246 N. W. 346; Ericsson v. Streitz, 132 Neb. 692, 273 N. W. 17.

These cases do not pass upon the question of whether the statute is directory or mandatory. There was no reason for doing so since in one of the cases a fee was allowed in the district court and approved by this court. In the other a fee was allowed in this court. In each it was said that the statute authorized a fee.

The statute is in terms mandatory and there is nothing in it to indicate that it should be applied otherwise. We hold that it is mandatory. However since the judgments are to be reversed and the actions remanded the allowances heretofore made must fall with that reversal, and the question of attorney's fees shall depend upon the outcome of the new trial.

The decree of the district court is reversed and the

cause remanded with directions as follows:

As to the third action decree shall be rendered in conformity with this opinion.

As to the first and second actions a new trial shall be granted and conducted also in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.