REQUESTED BY: Senator Floyd P. Vrtiska Nebraska State Legislature
You have requested an opinion from this office regarding the extent to which the Legislature is limited in exercising its duties under Article VII, Section 1 of the Nebraska Constitution. Specifically, the question you have posed is whether "Article VII or any other section of the Nebraska Constitution limit[s] the Legislature's power to establish the duties and obligations of local school boards or to restrict their authority to set budgets or levy taxes to provide the financial support for those budgets." As we have not been advised of any legislation prompting your inquiry, our response is necessarily broad and is not directed to specific legislation.[1] See Op. Att'y Gen. No. 96-003 (January 11, 1996); Op. Att'y Gen. No. 95-004 (January 18, 1995); and Op. Att'y Gen. No. 82-214 (March 15, 1982).
Pursuant to the Nebraska Constitution, the "Legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." Neb. Const. art. VII, § 1. Our analysis of this provision is governed by several canons of constitutional construction which have been adopted by the Nebraska Supreme Court. First, we are bound by the cardinal rule that the state Constitution must be applied and enforced as it is written. Stateex rel. Spire v. Conway, 238 Neb. 766, 472 N.W.2d 403 (1991). Next, the provisions of the Constitution must be read as a whole.Jaksha v. State, 222 Neb. 690, 385 N.W.2d 922 (1986). Finally, because the Nebraska Constitution "is not a grant but, rather, a restriction on legislative power, . . . the Legislature is free to act on any subject not inhibited by the Constitution." Stateex rel. Stenberg v. Douglas Racing Corp., 246 Neb. 901, 905,524 N.W.2d 61, 64 (1994); State ex rel. Creighton University v.Smith, 217 Neb. 682, 353 N.W.2d 267 (1984); Cf. Lenstrom v.Thone, 209 Neb. 783, 311 N.W.2d 884 (1981). In so acting, however, the court has established that "[t]he people of the state, by adopting a constitution, have put it beyond the power of the [L]egislature to pass laws in violation thereof." State exrel. Randall v. Hall, 125 Neb. 236, 243, 249 N.W. 756, 759
(1933); see also State ex rel. Stenberg v. Murphy, 247 Neb. 358,527 N.W.2d 185 (1995).
[1] In addition, this opinion is limited to a discussion of the Legislature's authority to structure school finance mechanisms. We do not address issues implicating the extent of the State Department of Education's authority to regulate local school districts on other matters. See Neb. Const. art. VII, §2 — § 4.
 Discussion
In accordance with these guidelines, we now address your inquiry. The supreme court has specifically determined that the Article VII, § 1 provision is not self-executing given that subsequent legislation was clearly necessary to carry the provision into effect. State ex rel. Shineman v. Bd. ofEducation, 152 Neb. 644, 42 N.W.2d 168 (1950). Therefore, the court has concluded that "the method and means to be adopted in order to furnish free instruction to the children of this state have been left by [Article VII, § 1] to the Legislature." Id. at 648, 42 N.W.2d at 170; Affholder v. State, 51 Neb. 91,70 N.W. 544 (1897). The Legislature has elected to execute Article VII, § 1 by creating a statewide system of school districts which are governed at the local level.[2]
With regard to the powers and duties of local school districts, the supreme court has consistently held that "[a] school district in this state is a creature of statute and possesses no other powers than those granted by the Legislature."School Dist. of Seward Educ. Ass'n v. School Dist. of Seward,188 Neb. 773, 779, 199 N.W.2d 752, 757 (1972) (quoting State ex rel.School Dist. v. Bd. of Equalization, 166 Neb. 785, 90 N.W.2d 421
(1958); see also School Dist. of Waterloo v. Hutchinson,224 Neb. 665, 508 N.W.2d 832 (1993); Banks v. Bd. of Educ. of ChaseCounty, 202 Neb. 717, 277 N.W.2d 76 (1979). Therefore, it is clear that "[t]he Legislature has plenary power and control over school districts, including provision for the appointment or election of governing bodies thereof. Consequently, [the Unicameral] may provide limitations on any authority to be exercised by a school board." School Dist. of Seward Educ. Ass'n,188 Neb. at 779, 199 N.W.2d at 757; Farrell v. School Dist. No.54, 164 Neb. 852, 84 N.W.2d 126 (1957).
"[T]he term `free instruction' in right to education cases [is] pertinent to the issue of constitutionality of school financing, including collection of fees, tuition, and taxes."Kolesnick v. Omaha Public School Dist., 251 Neb. 575, 581, ___ N.W.2d ___ (1997). The parameters within which the Legislature may act under Article VII, § 1 have been delimited in several supreme court decisions.
In Peterson v. Hancock, 155 Neb. 801, 54 N.W.2d 85 (1952), the court invalidated a legislative enactment which had sought to establish statutory incentives for consolidation or reorganization of local districts. The statutes at issue imposed a "blanket mill tax levy" on all taxable property located in elementary school districts, which levy was in addition to the regular school levy. Id. at 804-805, 54 N.W.2d at 88. Although most of the revenue raised by the blanket mill tax levy came from elementary school districts enrolling fewer than five students, only those districts which enrolled at least five students received revenues from the tax. Id. at 805-806, 54 N.W.2d at 89. In its review of that statutory finance formula, the Peterson
court acknowledged the Unicameral's broad authority under Article VII, § 1, but also determined that when enacting legislation under that provision, "the Legislature is of course restrained by other related limitations of the Constitution." Id. at 810,54 N.W.2d at 91. After analyzing the finance formula, the court concluded that application of the formula under review (1) produced a commutation of taxation in some school districts, in violation of Article VIII, § 4 of the Nebraska Constitution; and (2) was not levied uniformly, and, thus, violated Article VIII, § 1 of the Constitution. Id. at 812, 814,54 N.W.2d at 92-93.
In Gould v. Orr, 244 Neb. 163, 506 N.W.2d 349 (1993), a family whose children attended the Raymond Central School District, attempted to challenge the state school finance formula which existed prior to the 1990 enactment of LB 1059 on the basis that the formula denied them equal protection of the law, equal educational opportunities, and the right to uniform and proportionate taxation. Id. at 164, 506 N.W.2d at 350. While the dispute was ultimately resolved on procedural grounds, the court determined that an unequal method of financing a school district's instruction budget is not a per se violation of Article VII, § 1. Id. at 169, 506 N.W.2d at 353.
More recently, in Swanson v. State, 249 Neb. 466,544 N.W.2d 333 (1996), the court assessed a challenge to the "common levy" financing mechanism which resulted from the 1993 enactment of LB 839. At issue were the plaintiff's claims that (1) the common levy constituted a commutation of property tax, in violation of Neb. Const. art. VIII, § 4; (2) that the levy was nonuniform and, thus, in violation of Neb. Const. art. VIII, § 1; (3) that the levy created a state property tax, in violation of Article VIII, § 1A; and (4) that the common levy constituted "special legislation," in violation of Article III, § 18. Id. at 468, 544 N.W.2d at 336.
In reviewing the plaintiff's Article VIII, § 4 challenge, the court reaffirmed the principle that an impermissible commutation of taxes occurs "when tax funds raised in one [school] district are diverted entirely to the benefit of another [school] district." Id. at 471, 544 N.W.2d at 337 (citing Stateex rel. School Dist. v. Ellis, 160 Neb. 400, 70 N.W.2d 320
(1955); State ex rel. Groves v. School Dist., 101 Neb. 263,162 N.W. 640 (1917)). The court, however, did not find the "common levy" financing method to be violative of the Article VIII, § 4 proscription against commutation of taxes. 249 Neb. at 472-474,544 N.W.2d at 338-339. Specifically, the court determined that "[a] tax levy does not equal a commutation merely because the taxing district is broadened to reflect the actual benefits to the public. So long as all taxpayers receive the benefit of the taxes they remit, the taxing district passes constitutional muster without offending the prohibition against commutation."Id. at 474, 544 N.W.2d at 339.
The court also rejected the plaintiff's uniformity clause challenge as being without merit given that, by its very definition, the common levy taxed all Class I school districts at the same rate. Id. at 475, 544 N.W.2d at 339. With regard to the plaintiff's third claim, the court reiterated that "[t]he State cannot . . . avoid or circumvent [the Article VIII, § 1A prohibition against creation of a state property tax] by converting the traditional state functions into local functions supported by property taxes." Id. at 476, 544 N.W.2d at 340. Given that nothing in the common levy tax formula granted state control over individual school district budget decisions, the court rejected Swanson's state property tax challenge. The court further rejected the plaintiff's Article III, § 18 challenge and, ultimately, upheld the "common levy" financing formula. Id. at 480, 544 N.W.2d at 342.
Based upon the supreme court's interpretation of Article VII, § 1 in these cases, it is clear that the Legislature has full plenary authority over local school districts. In enacting legislation pursuant to Article VII, § 1, the Unicameral must comply with other limits imposed upon it by the Nebraska Constitution.
Sincerely,
 DON STENBERG Attorney General
 Lauren L. Hill Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved:
Don Stenberg
Attorney General
[2] See Gaddis v. School Dist., 92 Neb. 701, 139 N.W. 280
(1912), for an extensive history of the creation and variation of public school districts from 1855 through 1912.