State of Nebraska ex rel. Clarence A. H. Meyer,
Attorney General, relator, v. Roscoe E. Story,
as County Assessor of Adams County, et al.,
RESPONDENTS.
114 N. W. 2d 769

Filed May 4, 1962. No. 35205.

*Clarence A. H. Meyer*, Attorney General, for relator.

*Jack Devoe, James E. Ryan*, and *Donald L. Brock*, for respondents.

Heard before Carter, Messmore, Yeager, Spencer, Boslaugh, and Brower, JJ., and Scheele, District Judge.

Messmore, J.

This is an original action brought under the Uniform Declaratory Judgments Act, sections 25-21,149 to 25-21,164, R. R. S. 1943.

In the instant case it is not questioned that this court has jurisdiction to determine the constitutionality of Legislative Bill No. 489, Laws 1961, c. 382, § 1, p. 1173, which amended section 77-1242, R. S. Supp., 1959.

The relator's petition alleged in substance that the Seventy-second Session of the Nebraska Legislature in 1961 passed L. B. 489, which amended section 77-1242,

R. S. Supp., 1959, by adding thereto the language italicized in the following quotation of said section: "Dealers in motor vehicles shall report their vehicles on hand January 1 at 12:01 a.m. of each year as merchandise, describing each vehicle thus returned for ad valorem tax assessment, in the same manner and at the same proportion of actual value as other merchandise is assessed. *When a motor vehicle which has been reported for taxation is sold to and registered by a Nebraska resident, prior to July 1, the dealer shall file a copy of the invoice required by section 60-617 with the county assessor, together with proof of such registration, and such dealer shall then be credited on his ad valorem tax assessment with the proportionate amount of tax for the balance of the registration year."*

The relator's petition further alleged that L. B. 489 became law without the signature of the Governor June 22, 1961, and on that date the Governor requested that an action be brought by the Attorney General to determine the constitutionality of such legislation. The petition then set forth certain reasons why L. B. 489 is unconstitutional. Those we deem pertinent to a determination of this action will be discussed in the opinion.

The respondents motor vehicle dealers denied that the act was unconstitutional, and affirmatively asserted it was constitutional.

The answer of the respondent county assessor did not deny facts that had been alleged, and alleged that his only interest in the controversy was whether or not the act was constitutional so that the county assessors would know how to perform their official duties.

The sole issue involved is the constitutionality of L. B. 489, and the relator has filed a motion for judgment on the pleadings which is now before this court.

In 1952, at the general election held that year, the voters of the state approved a constitutional amendment whereby Article VIII, section 1, of this state's Constitution was amended to read in part as follows: "Taxes

shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, *except that the Legislature may provide for a different method of taxing motor vehicles;* * * *."

In 1953, the Legislature, pursuant to the 1952 amendment to the Constitution, adopted a procedure for taxing motor vehicles in part as follows.

Section 77-1240.01, R. S. Supp., 1959, provides in part: "Beginning January 1, 1954, in addition to the registration fees provided by Chapter 60, article 3, a motor vehicle tax is hereby imposed on motor vehicles registered for operation upon the highways of this state; * * * which motor vehicle tax shall be in lieu of all ad valorem taxes to which such motor vehicles would otherwise be subject."

Section 77-1240.02, R. R. S. 1943, provides: "In the event an application is made after the beginning of the registration year for registration of any motor vehicle not previously registered by the applicant in this state, the motor vehicle tax for such year on such motor vehicle shall be reduced by one-twelfth for each full month of the registration year already expired as of the date such vehicle was acquired. An application shall first be submitted to the county assessor on a form prescribed by the Auditor of Public Accounts who shall compute the tax and certify the same to the county treasurer."

Section 77-1240.03, R. R. S. 1943, provides: "Upon the transfer of ownership of any motor vehicle, the transferor shall be credited with the number of unexpired months remaining in the registration year; Provided, that where such vehicle is transferred within the same calendar month in which acquired, no refund shall be allowed for such month. Should such transferor acquire another motor vehicle at the time of such transfer, such transferor shall have the credit herein provided applied toward payment of the motor vehicle tax then owing and otherwise such transferor shall file a

claim with the county assessor upon a form prescribed by the Auditor of Public Accounts. The county assessor shall certify to the county treasurer the amount of tax refund and the taxing unit where the motor vehicle is registered. The county treasurer shall make payment to the claimant from the undistributed motor vehicle taxes of the taxing unit where the tax money was originally distributed."

Section 77-1241.01, R. S. Supp., 1959, provides: "Motor vehicles not subject to a motor vehicle tax, including dealers' motor vehicles on hand on January 1 at 12:01 a.m. and not registered for operation on the highways, shall be subject to the ad valorem tax on tangible property; such tax shall be computed according to the schedule of values fixed by the State Board of Equalization and Assessment; Provided, that in the event a motor vehicle which has been assessed for ad valorem tax purposes, except dealers' motor vehicles on hand January 1 at 12:01 a.m., is later registered during the registration year for which taxes have been assessed, the owner against whom such ad valorem taxes have been assessed shall be credited with the proportionate amount for the period during which the motor vehicle tax has been paid."

The phrase "ad valorem" means literally "according to the value," and is used in taxation to designate an assessment of taxes against property at a certain rate upon its value. See, Powell v. Gleason, 50 Ariz. 542, 74 P. 2d 47, 114 A. L. R. 838; State v. Wynne, 134 Tex. 455, 133 S. W. 2d 951.

The procedure adopted by the 1953 Legislature, shown by the above-cited sections of the statutes, has continued to be followed. There have been a few minor changes made in these statutes by the Legislature which have not changed this procedure. Under this procedure, a private owner of a motor vehicle who buys such a vehicle has the tax on it reduced by one-twelfth for each month that has expired at the time he acquires the

motor vehicle. In the event the private individual sells his motor vehicle, he obtains a refund of taxes based upon the number of months remaining in the year, as indicated by one of the preceding sections of the statutes. A motor vehicle in the hands of a private owner is taxed for a full 12 months.

Dealers are required to list their motor vehicles on hand at 12:01 a.m. on January 1 each year, and the following November they pay the tax on those motor vehicles for the full year. However, a motor vehicle dealer does not have to pay any tax on any motor vehicle he owns at any time during the year if he at any time in the month of January sells those motor vehicles he listed on January 1 of the year. He does not pay any tax on motor vehicles he acquires after he has listed his stock of motor vehicles at 12:01 a.m. January 1 in each year. A motor vehicle dealer may sell any number of motor vehicles during January of each year and by so doing avoid taxes on such motor vehicles.

The foregoing is an aid in putting L. B. 489 in its proper perspective. However, the constitutionality of the procedure in taxing motor vehicle dealers prior to the adoption of L. B. 489 is not being questioned in this action.

When the constitutional amendment of 1952 authorized the Legislature to provide "a different method of taxing motor vehicles," it did not authorize it to provide a different method of taxing motor vehicle dealers.

Article VIII, section 1, of the Constitution of this state, is in part as follows: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct. Taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, except that the Legislature may provide for a different method of taxing motor vehicles; * * *."

The relator contends that the Legislature may not withdraw any property from the principle of uniformity of taxation, and one owner of property cannot be com-

pelled to pay a greater proportion of taxes according to the value of his property than another property owner of the same class is required to pay.

The relator argues that a private owner of a motor vehicle pays taxes on such vehicle all the time he owns it, and is required to pay such taxes in advance; that the Legislature has permitted motor vehicle dealers to escape certain taxation on vehicles owned by them in the manner heretofore mentioned; and that the Legislature has discriminated between individuals who own motor vehicles and motor vehicle dealers as taxpayers.

In the case of Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85, this court construed Article VIII, section 1, of the Constitution as inhibiting the Legislature from discriminating between taxpayers in any manner. See, also, City Trust Co. v. Douglas County, 101 Neb. 792, 165 N. W. 155.

In the case of Chicago, B. & Q. R. R. Co. v. State Board of Equalization & Assessment, 170 Neb. 77, 101 N. W. 2d 856, this court said: "Taxing authorities may not withdraw any property from the principle of uniformity of taxation as provided by the Constitution and statutes of the state and one owner of property cannot be compelled to pay a greater proportion of taxes according to the value of his property than another property owner of the same class is required to pay." See, also, Union P. R. R. Co. v. State Board of Equalization & Assessment, 170 Neb. 139, 101 N. W. 2d 892.

Article VIII, section 1, of the Constitution, deals with the taxation of property, not people.

In Boyd Motor Co. v. County of Box Butte, 159 Neb. 514, 67 N. W. 2d 774, this court pointed out that the amendment of that section dealing with motor vehicles authorized motor vehicles to be placed in a separate class, but there was no intimation that the people who owned motor vehicles could be divided into two classes.

The language used in Article VIII, section 1, of the Constitution, heretofore mentioned, does not indicate

that the Legislature can depart from or dispense with the requirement of uniformity. The words "a different method," as appear in Article VIII, section 1, do not refer to the terms "uniformly and proportionately" for the reason that the only method referred to in that sentence is by valuation. Uniformity of taxation of motor vehicles is still maintained. The amendment only authorized taxation of motor vehicles by a method other than by valuation.

In State ex rel. Cornell v. Poynter, 59 Neb. 417, 81 N. W. 431, the court said: "In every instance where this court has spoken upon the subject it has been determined that the legislature is powerless to relieve from the burdens of taxation the property of any individual or corporation, but that the constitutional rule of uniformity requires all taxable property within the taxing district where the assessment is made shall be taxed, except property specifically exempt by the fundamental law. This doctrine is entirely sound, and the language of the constitutional provision we have been considering will not authorize or permit of any other or different interpretation."

In the light of that doctrine, the Legislature could not exempt certain classes of owners from any amount of taxes on their motor vehicles, nor could the Legislature provide that dealers in motor vehicles pay a smaller percentage of the taxes on such vehicles, or, in effect, pay no taxes for a certain period of time on such vehicles unless the Constitution clearly provided for such an exemption.

In Homan v. Board of Equalization, 141 Neb. 400, 3 N. W. 2d 650, this court said: "Taxes must be levied by valuation uniformly and proportionately upon all tangible property. Const. art. VIII, sec. 1."

It is apparent that the 1952 amendment relating to motor vehicles permitted taxation by a method other than by valuation. The amendment contains no language which would permit the Legislature to disregard

the basic principle of uniformity which must be followed in matters of taxation. The new language appearing in L. B. 489 violates the requirement of uniformity of taxation.

The respondents assert that L. B. 489 was to correct tax burdens placed upon motor vehicle dealers that existed prior to its enactment or, under the 1953 law enacted by the Legislature, to provide a different method of taxing motor vehicles. While it may be true that the Legislature intended by the enactment of L. B. 489 to correct certain tax burdens relating to motor vehicles as contended for by respondents, we are concerned only as to whether or not L. B. 489 is in violation of our Constitution.

The respondents further assert that the amendment of 1952 to Article VIII, section 1, of the Constitution, which provides that the Legislature may provide for a different method of taxing motor vehicles, creates an exception to previous requirements that all taxes shall be levied by valuation uniformly and proportionately on tangible property and franchises, and such exception is now a part of our fundamental law.

In this connection, the respondents cite State ex rel. Meyer v. County of Lancaster, *ante* p. 195, 113 N. W. 2d 63. In that case this court had before it L. B. 159, which was the legislative implementation of a constitutional amendment adopted by the electorate in 1960. The constitutional amendment provided that the Legislature could authorize any county, incorporated city or village to acquire real or personal property and lease the same to manufacturing and industrial enterprises, and to issue revenue bonds for the purpose of defraying the costs, etc. Prior to the adoption of the amendment to the Constitution, this court held in State ex rel. Beck v. City of York, 164 Neb. 223, 82 N. W. 2d 269, that such procedure was in violation of the Constitution.

After the constitutional amendment had been adopted, in the case of State ex rel. Meyer v. County of Lan-

caster, *supra,* the court said: "Even though we may question the wisdom of a given enactment as a matter of policy, that gives us no right to strike it down if it violates no provision of the fundamental law. We clearly stated our position on this type of legislation previous to the amendment in State ex rel. Beck v. City of York, 164 Neb. 223, 82 N. W. 2d 269. Now, however, L. B. 159 must be viewed in the light of the adoption of the amendment, which has changed our fundamental law in an attempt to validate that which we held to be invalid. * * * While we may still feel the financing of private enterprises with public funds is foreign to the fundamental concept of our constitutional system, as we said in State ex rel. Beck v. City of York, *supra,* the constitutional prohibition has been removed by amendment and it is now a part of our fundamental law."

The respondents assert that in the instant case the 1952 amendment heretofore mentioned is now a part of our fundamental law; that an exception can be written into the Constitution which will effectively withdraw a class of property from the principle of levy by valuation, uniformly and proportionately; and that therefore, L. B. 489 relates itself to what was said by this court in the above-cited case.

The respondents argue that we now have an exception which has been carved out of the Constitution and permits legislation which could not have validly existed before the enactment of L. B. 489; and that under the authority of the Legislature to provide a "different method of taxing motor vehicles" the prohibition argued by the relator has been removed.

We are in accord with the respondents' assertion that the fundamental law may be changed by constitutional amendment, and that legislation may be enacted in compliance with such amendment. We are not in accord that a statutory amendment to existing statutory law can be held valid when such amendment is in violation of the provisions of our Constitution. We believe in

what has been said previously regarding the constitutionality of L. B. 489. The following is also pertinent to the constitutionality of L. B. 489.

The Legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever. Article VIII, section 4, Constitution of Nebraska.

This constitutional provision makes it clear that the Legislature cannot release either persons or property from a proportionate share of taxes. That would be the effect of L. B. 489.

In Steinacher v. Swanson, 131 Neb. 439, 268 N. W. 317, this court, referring to Article VIII, section 4, of the Constitution, said: "Clearly, under this constitutional provision, the legislature cannot reduce the amount of the tax, extend the time of payment, or in any manner change the method of payment." See, also, County of Lancaster v. Trimble, 33 Neb. 121, 49 N. W. 938; County of Lancaster v. Rush, 35 Neb. 119, 52 N. W. 837. The opinion went on to say: "It will be noted in the cases last above cited that a law which makes it possible for a taxpayer to escape his tax obligation to the state is violative of section 4, art. VIII of the Constitution. It must be conceded that, if the legislature has the power to extend the time in which taxes must be paid, as was done in the instant case, it could repeat the extensions or extend them for such a duration of time that it would amount to a remission of the tax. Under the cases cited, the legislature is without power to so do. The legislature cannot accomplish indirectly what it may not do directly. As has often been said, it is not what has been done but what can be done under a statute that determines its constitutionality. We submit that, under the act before us, the legislature could effect a complete

remission of taxes by the indirect method mentioned."
See, also, Peterson v. Hancock, *supra.*

By Article VIII, section 4, of the Constitution of Nebraska, the Legislature, in plain and unequivocal language, is inhibited from enacting any law releasing or discharging any individual, corporation, or property from their or its proportionate share of the taxes to be levied for state or municipal purposes.

It seems clear in the light of what has heretofore been said that applying Article VIII, section 4, of the Constitution to the provisions of L. B. 489, such legislative act is violative of the Constitution because it constitutes a release or discharge from a proportionate share of taxes in favor of motor vehicle dealers.

There are other constitutional questions raised in this case which need not be determined.

We conclude that L. B. 489 is violative of Article VIII, section 1, and Article VIII, section 4, of the Constitution of Nebraska, and therefore must be declared unconstitutional. Judgment on the pleadings should be rendered in favor of the relator.

JUDGMENT FOR RELATOR.