REQUESTED BY: Dear Senator:
In your letter of December 20, 1977, you have referred to a recent change in the method of taxing mobile homes, and have inquired as to the constitutionality of such change. Your inquiry is based upon the fact that you now have a bill dealing with this matter which is being held in committee. We believe there has been no such change in the method oftaxing mobile homes, but only a change in the method used by the Tax Commissioner in determining actual value of such homes. So far as we can determine, it presents no constitutional problems.
The change was not the result of any recent statutory amendment. Cabin trailers and mobile homes have been included in the definition of motor vehicles, and taxed as such, since the amendment of section 77-1238, R.R.S. 1943, by LB 1100 in 1972. Section 77-1239, R.R.S. 1943, which requires the Tax Commission to prepare a schedule of values of motor vehicles, has not been amended since 1972. The change in the method of valuing mobile homes came about as a result of new procedures adopted by the Tax Commissioner.
Before he instituted this change the Tax Commissioner had received a number of complaints that mobile homes were grossly undervalued, and that their owners were not paying their fair share of taxes. On investigation of these complaints, he concluded that they were well-founded.
As a consequence, at the last hearing he held to fix the value of motor vehicles, he adopted a new method of determining actual values of mobile homes. He determined that there were different classes of mobile homes, in terms of quality. He therefore established four classes, denominated A, B, C, and D, with Class A being below average quality, Class B average quality, Class C above average quality, and Class D top grade quality. Each model by each manufacturer was assigned to a certain class, pursuant to evidence adduced, and was valued at a certain amount per square foot. We assume that the evidence adduced at the hearing supported the Tax Commissioner's findings, since no appeal has been taken from his action, as authorized by section 77-1239.01, R.R.S. 1943.
The schedules, showing the classification of the various models, and the value per square foot of such models for year of manufacture are then sent to the county assessors, who get the value of the particular model home by determining the model (and hence, the class), the year of manufacture, and the square footage, and then multiplying the square footage by the appropriate figure furnished by the Tax Commissioner.
Section 77-1239 requires motor vehicles to be valued in accordance with section 77-201, which in turn requires all taxable property to be valued at its actual value. No particular procedure for determining actual value is prescribed in section 77-1239, and any procedure calculated to arrive at actual value would be acceptable, in the absence of constitutional or statutory provisions to the contrary. We are aware of none, and we can see no reason why the method used by the Tax Commissioner should not arrive at correct values. If it did not, injured taxpayers had a remedy in the form of appeal, which was not utilized. Article VIII, Section 1 requires taxes to be levied by valuation uniformly and proportionately, but there is no requirement of uniformity in the method of arriving at actual value.
You also inquire whether a distinction could constitutionally be made between the method of taxing permanent family dwellings and that of taxing mobile homes.
The answer is that there could constitutionally be such a difference.
Mobile homes are classified as motor vehicles. Article VIII, Section 1 specifically authorizes the Legislature to provide a different method of taxing motor vehicles. While we do not think the practice of the Tax Commissioner in fixing value constitutes a difference in treatment of mobile homes and real estate, since actual value is to be arrived at for both, the Legislature could, if it chose, provide for different treatment in that respect.
Your last question is whether a distinction can constitutionally be made in the method of taxing mobile homes affixed to a foundation and the method of taxing those not so affixed. If you are speaking about a mobile home on a foundation on real estate owned by the owner of the mobile home, such a home might become a part of the real estate, and lose its character as a mobile home. The discussion in the previous paragraph would then answer your question.
If, on the other hand, the mobile home is placed on a foundation on leased ground, with no intention that it become permanently affixed to the real estate, it would retain its character as personal property, and would remain a mobile home, and a motor vehicle, as contemplated by section77-1238. In that situation it is doubtful that a distinction could properly be made between the mobile home so affixed and one not so affixed.
In State ex rel. Meyer v. Story, 173 Neb. 741,114 N.W.2d 769 (1962), the court struck down a statute which attempted to treat automobile dealers differently from other owners of motor vehicles in the taxation of their motor vehicles. The court said that the amendment of Article VIII, Section 1 authorizing a different method of taxing motor vehicles did not authorize a different method of taxing motor vehicle dealers. Although the Constitution has now been amended to authorize different treatment in the taxation of motor vehicles owned by motor vehicle dealers, the reasoning of State ex rel. Meyer v. Story still applies. So long as a mobile home has not become attached to real estate, we would assume that it remains a mobile home. It would probably be unreasonable classification, in violation of Article III, Section 18 of the Constitution, and a violation of the uniformity requirements of Article VIII, Section 1, to classify mobile homes on the basis of whether they were, or were not, sitting on a foundation, so long as they were not so affixed as to become a part of the real estate.