REQUESTED BY: Senator Ray E. Lundy Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Lundy:
This is in response to your letter of February 15, 1985, in which you ask several questions about the constitutionality of LB 691. Your questions concern the proposed amendment to Neb.Rev.Stat. § 8-1,102 (Reissue 1983) which would purport to vest both legal and equitable title of the assets of an insolvent bank in the Banking Department, where the department acts as the receiver and liquidating agent, and would further provide that:
 All taxes and assessments on the real estate owned by the bank which are unpaid upon the declaration of insolvency, all unpaid taxes or assessments on real estate subsequently received by the department as receiver of the bank, and all such taxes and assessments which accrue during the receivership shall be void, and the property affected by the tax or assessment shall be wholly discharged and released therefrom.
Your first question is whether Article VIII, Section 4, of the Nebraska Constitution grants the Legislature the power `(1) to provide for the cancellation of delinquent taxes and special assessments by the authority which imposes the taxes only, or (2) may the State be allowed to forgive any delinquent taxes or assessments on its property without due process or compensation requirements?'
Article VIII, Section 4, of the Constitution provides as follows:
 Except as to tax and assessment charges against real property remaining delinquent and unpaid for a period of fifteen years or longer, the Legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever; Provided, that the Legislature may provide by law for the payment or cancellation of taxes or assessments against real estate remaining unpaid against real estate owned or acquired by the state or its governmental subdivisions.
Before proceeding further to answer your question, we should clarify the meaning of this section. Upon first glance, it might appear that this prohibition against the release of taxes applies only to taxes levied for `state purposes' or due any municipal corporation. If this were the case, it would not include the taxes levied by counties and other governmental subdivisions of the state. Of course, the state government itself has not received revenue from property taxes since the adoption of the Sales and Income Tax Act in 1967. We believe, however, that a proper reading of the language in this section `for state purposes' means those taxes levied by the state or any of its political subdivisions of government. A comprehensive review of the cases interpreting this provision, all of which occurred during the period prior to 1967 in which property taxes were levied by both the state and political subdivisions of government, convinces us of this fact. In those cases the court, while not dealing directly with this issue, uniformly applied this prohibition against the release of taxes to all taxes levied by the state and its political subdivisions, regardless of whether those taxes were ultimately used for the purpose of running state government or to support local governmental functions. In this regard see, County ofLancaster v. Trimble, 33 Neb. 121, 49 N.W. 938 (1891);Steinacher v. Swanson, 131 Neb. 439, 268 N.W. 317 (1936);Peterson v. Hancock, 155 Neb. 801, 54 N.W.2d 85 (1952); and State ex rel. Meyer v. Story, 173 Neb. 741,114 N.W.2d 769 (1962). Thus, we do not believe that this interpretation by the courts would change merely because the state government no longer receives revenue from property taxes. The political subdivisions nevertheless remain solely creatures of the state and taxes levied by them are in effect taxes for `state purposes' in the general sense, and as used in this section of the Constitution.
As we understand your first question, you wish to know whether the Legislature may cancel taxes on state owned property only by granting this power of cancellation to the particular governmental authorities which levied the taxes in the first place, or whether the Legislature itself may pass laws directly canceling such taxes. As we read this constitutional provision, and particularly the last sentence, the Legislature itself may pass legislation directly canceling delinquent taxes which have been levied on property owned by the state or its governmental subdivisions. There are simply no requirements that the discretionary authority to cancel such taxes be provided to the local subdivisions which originally levied such taxes. In fact, this constitutional provision is the basis for existing legislation which permits the state or other governmental subdivisions to cancel delinquent taxes on its property where those taxes exceed the value of that property. See, Neb.Rev.Stat. § 77-2801, et seq. (Reissue 1981). Likewise, there are simply no requirements under the Constitution for compensation to be paid to governmental subdivisions where such taxes have been canceled.
Your second question is as follows:
 Does LB 691, which vests all legal and equitable title of the assets of an insolvent institution in the Banking Department, represent an unconstitutional taking of the property of (1) an insolvent bank, or (2) possible third-party creditors or lien holders of such assets, without meeting due process requirements or providing just compensation?
The Department of Banking, according to the overall statutory scheme, is acting as a receiver and liquidating agent for an insolvent bank, Neb.Rev.Stat. § 8-198 (Reissue 1983). It does so with the same powers, and thus has the same general limitations of its authority as any other receiver under the laws of the state, Neb.Rev.Stat. § 8-199
(Reissue 1983). Likewise, the Banking Department as receiver may be subject to the jurisdiction of the district court in the exercise of its powers. None of these other statutes pertaining to this aspect of the Banking Department's fiduciary role as a receiver are repealed by LB 691, and the amendment to Neb.Rev.Stat. § 8-1,102 contained in the bill must be construed within the framework of this existing statutory scheme. Even the amended version of § 8-1,102
would contain the following language, `the department shall become the receiver and liquidating agent to wind up the business of that bank, . . .'
Normally a receiver is only considered to have equitable title to the property which it supervises. The bill here purports to give both legal and equitable title to the Banking Department as receiver. We do not believe that this destroys the basic nature and fiduciary capacity of the Banking Department as a receiver. Consequently, whatever the nature of the title the statute purports to give to the Banking Department, it can be exercised only within the limited capacity of the Banking Department as receiver and liquidating agent. In this sense the Banking Department is not a true owner of such property because it has substantially less than full control over such property. Whatever of ownership the Banking Department may exercise as receiver, it does so only in its limited fiduciary capacity on behalf of the depositors of the insolvent bank and not as an outright owner of that property. To construe this statute otherwise, and suggest that the Banking Department thus would have full control and authority over such property, and that the state would be the outright owner of such property, would clearly render this amendment unconstitutional as a taking of property without due process of law and just compensation.
Your third question is whether `LB 691 represent(s) an unconstitutional taking of the vested rights of a political subdivision in the collection of its delinquent taxes or special assessments?'
We do not believe that political subdivisions have a vested right in the collection of taxes other than as provided by statute and the State Constitution. `The revenues of the county do not become the property of the county in the sense of private ownership, . . .' Peterson v.Hancock, supra, at 814. Here the Constitution provides a mechanism whereby delinquent taxes on state owned land may be canceled by subsequent legislation. If that procedure is followed, the requirements of the law have been complied with.
Your fourth question is whether:
 LB 691 unconstitutionally impair(s) the contract rights (1) of political subdivisions in the collection of delinquent taxes or special assessments, or (2) of private individuals holding mortgages or liens against assets of an insolvent bank coming under LB 691?
As indicated above, the right of political subdivisions to levy and collect taxes is governed solely by the Constitution and statutes of the state. There are no contractual rights involved. We furthermore fail to see how the contractual rights of individuals holding mortgages or liens on such property would be affected by the cancellation of delinquent taxes owed on the property. LB 691 would apparently not affect the status of the lien and mortgage holders, and those liens and mortgages will remain on the property regardless of the passage of LB 691.
Your fifth question is:
 Does LB 691 represent special legislation since it will effect (sic) only Commonwealth and the other insolvent financial institutions throughout the state will not be treated in a like manner because the receivers of those institutions will not be the Banking Department:
We do not read LB 691 to apply only to one financial institution, but rather it would apply to all banks or financial institutions subject to receivership by the Banking Department. This appears to be a reasonable classification based on actual differences in situations or circumstances. The Legislature may make reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but such classification must rest upon real differences of situations and circumstances surrounding members of a class relative to the subject of the legislation.Prendergast v. Nelson, 199 Neb. 97, 256 N.W.2d 657 (1977). Legislative classifications will be upheld against constitutional attack if they bear some reasonable relationship to the legitimate purposes of the legislation. Pegasus ofOmaha, Inc. v. State, 203 Neb. 755, 280 N.W.2d 64 (1979).
Your sixth question is, `Would a delegation by the State to give political subdivisions discretionary authorization to forgive taxes and special assessments be constitutional?'
Of course, Article VIII, Section 4, of the Constitution is a general prohibition which forbids the Legislature from releasing any taxes except as permitted by this provision. We think this provision is clear, and the Legislature cannot pass legislation which would allow the forgiveness of taxes in any form, including the mechanism of granting discretionary authority to political subdivisions. In any event, the Legislature could not do indirectly what it cannot do directly.Peterson v. Hancock, supra, at 821. Again, this answer must be understood to be qualified by the last sentence of the constitutional provision which does permit the Legislature to pass laws releasing taxes on property owned by the state or political subdivisions.
Your seventh question is as follows:
 If taxes and special assessments are forgiven, would that violate the constitutional prohibition against the impairment of the obligation of contracts, as applied to holders of bonds for which taxes and special assessments have been pledged for repayment thereof?
Such bondholders would have no contractural right to repayment of taxes levied against specific property, only to the repayment of the bonds by revenues in general. There would thus be no such impairment of contract under the proposed legislation.
Your final question is simply whether LB 691 is constitutional.
Article VIII, Section 4, of the Constitution, as we have indicated, is a general prohibition against the cancellation of property taxes by the Legislature. The exception to this is for property owned or acquired by the state or its political subdivisions. The apparent intent of LB 691 is to fall within this exception. The underlying question which must be addressed is whether or not it achieves this result, or in other words, does the property of insolvent banks to which the Banking Department acquires title as receiver pursuant to statute come within this exception pertaining to property owned or acquired by the state. We think this is a very doubtful result.
As we have previously indicated, whatever title the Banking Department has, it has only in its limited fiduciary capacity as receiver and only for those very limited purposes. This property is not owned by the state in the true sense of that term, since it is held only for the limited period of the receivership and cannot be used by the state for its own purposes. The state simply does not have the full powers incident to outright ownership of such property. Thus, we do not believe it likely that a court would find that the state, through the Banking Department as receiver, is a true owner of such property for the purpose of the exception to Article VIII, Section 4, of the Constitution. A review of the legislative history of this constitutional amendment suggests that the intent of this exception was to apply only to property owned by the state as that term is generally understood. There is absolutely nothing to suggest that it was meant to apply to those circumstances in which the state might acquire some limited and temporary power or title to property. In this regard, the subsequent attempt by LB 691 to cancel the taxes on such property would most likely be held to be unconstitutional and in violation of Article VIII, Section 4, of the Constitution.
Sincerely,
ROBERT M. SPIRE Attorney General
John Boehm Assistant Attorney General